Argued June 25; affirmed July 14; rehearing denied September 10; second petition for rehearing denied September 15, 1936

# HIBERNIA SECURITIES CO. *v.* UNITED MANUFACTURING CO. ET AL.

### (59 P. (2d) 384)

*W. C. Bristol,* of Portland, for appellant.

*John P. Hannon,* of Portland (Frank C. Hanley, of Portland, on the brief), for respondent.

ROSSMAN, J. The complaint, omitting mention of matters immaterial to this appeal, alleges that December 10, 1929, the defendant United Manufacturing Company, to which we shall hereafter refer as the defendant, signed and delivered to the Hibernia Commercial and Savings Bank a negotiable promissory note of the denomination of $15,000, payable three years hence, and bearing 7 per cent interest, payable monthly. It further alleges that concurrently with the signing of the note the defendant executed and delivered to the payee a real estate mortgage to secure pay-

ment of the note; that June 20, 1930, the mortgagee, at the defendant's request, released from the mortgage a portion of the property; and that later, for valuable considerations, the following transfers of the note and mortgage were made: Hibernia Commercial and Savings Bank to the Hibernia Bank, another corporation; Hibernia Bank to this plaintiff; the plaintiff to the Reconstruction Finance Corporation; and the Reconstruction Finance Corporation to the plaintiff. The complaint alleges that the defendant failed to maintain the interest payments, and that the plaintiff, by virtue of the acceleration clause in the note, declared the balance of the unpaid principal ($10,000) and all interest due. The answer denies that the defendant borrowed from the Hibernia Commercial and Savings Bank any sum whatever. It denies that the defendant signed the note and mortgage described in the complaint, and controverts the transfers set forth in that pleading. By way of a first further defense, it alleges that the plaintiff "is not the real party in interest and is not the legal owner and holder of any obligation of this defendant". A second defense alleges that before the plaintiff instituted this suit its predecessors in interest had "received from others on the part of the defendant moneys and credits in large amounts in the full settlement, accord and satisfaction of all of the items purporting now to be made and claimed against this defendant," thereby extinguishing defendant's liability upon the note. A third defense alleges that the obligation which the plaintiff is endeavoring to enforce was "compounded and settled by the Hibernia Commercial and Savings Bank before the incorporation of the plaintiff. A fourth defense alleges that "all the matters and things set forth in the complaint were individual indebtednesses, among many other items, to and with

the Hibernia Commercial and Savings Bank as of and about the first day of June, 1925,'' and that on that day ''the same were then settled and adjusted by said Hibernia Commercial and Savings Bank with the individuals against whom said indebtedness were made''. A fifth defense alleges that the Hibernia Commercial and Savings Bank was paid ''more money, principal and interest'' than was due to it upon the obligations owing from the defendant. By way of defense and a first counterclaim, the answer alleges that since May 14, 1932, the defendant effected ''a deal for the valuable and satisfactory disposition of all of said real property described in the complaint,'' but that the plaintiff and its agents ''in some way or manner sought out and solicited the persons with whom said deal was being consummated, and persuaded and induced them to abandon the same'' whereby the contemplated sale failed of consummation to the defendant's damage in the sum of $20,000. For a second affirmative defense and counterclaim, the defendant alleges that between January 4, 1930, and February 10, 1932, there was paid to the Hibernia Commercial and Savings Bank the sum of $6,753.71; that between June 2, 1925, and February 10, 1932, there was paid to it the further sum of ''$14,235 and interest of $7,295.39 * * *, together with the sum of $100 as of June 2, 1925, and the further sum of $900 some time thereafter''. The answer does not mention the identity of the payer nor the obligation upon which the payments were to be applied, and, likewise, does not state the reason the payments were made. It concludes with the following: ''And, if it be that Hibernia Securities Company is allowed to maintain and prosecute this suit, then it is in equity and good conscience that Hibernia Commercial and Savings Bank, its predecessors in interest or those now repre-

senting it, should repay and return the monies so received at the dates and times and in the amounts herein set forth, all of which said Hibernia Commercial and Savings Bank has received and taken and appropriated to its own use and for its own benefit and against the interests of this defendant, and in equity should not now be allowed to keep or retain the same.'' A third affirmative defense and counterclaim alleges that the relationship of the Hibernia Commercial and Savings Bank to this defendant was ''a fiduciary and confidential'' one in the transactions of the business mentioned in the complaint; that the bank kept all of the records concerning the condition of the account; that it never rendered an accounting; that it now seeks to charge the defendant with improper items, and that an accounting is necessary. The answer concludes with a prayer that the plaintiff recover nothing and that the defendant have judgment against the plaintiff for the sums mentioned in its counterclaims. The reply denies all of the new matters averred in the answer.

The first assignment of error is predicated upon contentions that the plaintiff ''is not the real party in interest and did not show a substantial interest to maintain this suit''. One C. B. Sewall testified that he was vice-president and secretary of the Hibernia Commercial and Savings Bank from 1905 until the bank ceased operations in 1931; that later he became vice-president of the plaintiff, and that upon the insolvency of the Hibernia Bank, he became its liquidating agent. He produced the note and mortgage involved in this suit, and identified the signatures of defendant's corporate officers who signed its name to the note and mortgage. He related the circumstances out of which these instruments arose. Mr. Sewall testified that at those times one J. F. Daly was the president of the

Hibernia Commercial and Savings Bank. Upon the back of the note is stamped "Hibernia Commercial and Savings Bank" under which is written in ink "J. F. Daly, Pres." Mr. Sewall identified the written name just mentioned as the signature of J. F. Daly, and testified that the endorsement was put upon the note to effect its transfer to the Hibernia Bank. The Hibernia Commercial and Savings Bank failed December 19, 1931, and was succeeded by the Hibernia Bank, which failed December 31, 1932.

We shall now review the evidence upon which the plaintiff relies to prove the other assignments mentioned in the complaint. May 14, 1932, the Hibernia Commercial and Savings Bank and A. A. Schramm, superintendent of banks of this state, signed an instrument which acknowledges their receipt of $10 and other valuables, and which recites an assignment and transfer to the Hibernia Bank of all the assets of the Hibernia Commercial and Savings Bank. The proof shows that these assets included this note and mortgage. In June, 1932, Schramm's final account as liquidating agent of the Hibernia Commercial and Savings Bank was approved by an order of the circuit court of Multnomah county. May 14, 1932, the Hibernia Bank signed an instrument which acknowledges its receipt of a consideration of $10 and which recites an assignment and transfer of this note and mortgage, together with others, to the plaintiff. May 14, 1932, the plaintiff signed an instrument reciting its receipt of $10 consideration and the assignment of this note and mortgage, together with others, to the Reconstruction Finance Corporation. The proof shows that this assignment was made to secure the Reconstruction Finance Corporation (see 47 U. S. Stat. at Large, p. 5) for a loan of $500,000 which it made to the plaintiff. Another

document received in evidence which is signed, "Reconstruction Finance Corporation, by Walter D. Shultz, Manager, Portland Loan Agency, its Attorney-in-Fact," and which is dated October 24, 1932, states that in consideration of $1 and other valuable items that Corporation assigned to the plaintiff the aforementioned note and mortgage. The certificate of Freda M. Huebner, notary public, which forms a part of this instrument, states that Walter D. Shultz, simultaneously with the execution of the instrument, stated that he "is manager of the Portland Loan Agency of the Reconstruction Finance Corporation; that he is attorney-in-fact for said Corporation to execute assignments of mortgages in the State of Oregon; that the aforementioned instrument was signed by him in behalf of said Corporation by authority of its board of directors". These four instruments in their entirety were received in evidence without any objection whatever from the defendant. Testimony indicates that the note and mortgage were reassigned to the plaintiff by the Reconstruction Finance Corporation for the purpose of enabling the plaintiff to institute the present suit. This testimony is fortified by the documentary proof which we shall now review. According to a copy of a letter received in evidence upon the offer of the defendant, Guy N. Hickok, secretary of the plaintiff, on October 5, 1932, wrote to "W. D. Shultz, Manager, Portland Loan Agency, Reconstruction Finance Corporation," stating: "We have made no progress in our efforts to collect on the indebtedness of the United Manufacturing Company, and have concluded that foreclosure is the next step to be taken. We, therefore, request that you return to us the note and mortgage of the United Manufacturing Company and reassign the mortgage to us." The next document which was received in evi-

dence, also upon the offer of the defendant, is written upon stationery with the following letterhead: "Loan Agency of the Reconstruction Finance Corporation." It is dated October 18, 1932, and bears the signature, "W. D. Shultz, Manager." It is addressed to the plaintiff and marked for the attention of Guy N. Hickok. It outlines "the manner of proceeding in the liquidation of any collateral held by us as security for your indebtedness" and states: "The security will be withdrawn from the custodian under trust receipt." This letter adds that if liquidation is by the process of foreclosure, the complaint must be submitted to the Reconstruction Finance Corporation for its approval before being filed. The next document was also received upon the offer of the defendant and is the reply of Mr. Hickok to the letter just mentioned. It is dated October 18, 1932, and is addressed to "Mr. W. D. Shultz, Manager, Portland Loan Agency, Reconstruction Finance Corporation." It states that the conditions mentioned in the aforementioned letter of Mr. Shultz are agreeable to the plaintiff. The next document, also received upon the defendant's offer, is upon the stationery of the Reconstruction Finance Corporation, and it, too, bears the signature, "W. D. Shultz, Manager." It is addressed to the plaintiff and is directed to the attention of Guy N. Hickok. It states: "We are enclosing herewith two copies of trust receipt" for the convenience of the plaintiff in effecting a withdrawal of the note and mortgage of the United Manufacturing Company. It adds that, after Hickok has signed and delivered the trust receipts to the custodian of the Reconstruction Finance Corporation and has obtained the documents, further proceedings must be taken in obedience to the instructions of the Reconstruction Finance Corporation outlined in its letter of October 18,

1932. A document entitled "Trust Receipt", dated October 24, 1932, which was received in evidence upon the defendant's offer, acknowledges plaintiff's receipt from the Reconstruction Finance Corporation of the note and mortgage with which we are concerned. It bears the signature of the plaintiff through the medium of Guy N. Hickok, secretary. It will be recalled that the assignment of the note and mortgage, ostensibly signed by the Reconstruction Finance Corporation, is also dated October 24, 1932.

■■ We are not certain that we understand the defendant's contention concerning the first assignment of error, although we have read carefully more than once the argument presented in support of it. The defendant seems to believe that the evidence does not show that Shultz signed the aforementioned letters, and that it fails to show that the Reconstruction Finance Corporation authorized him to reassign the note and mortgage to the plaintiff. Mr. Sewall, without objection from the defendant, testified, "Walter D. Shultz was the manager of the Portland Loan Agency, Reconstruction Finance Corporation." This testimony was admissible as proof of Shultz's agency: Wigmore on Evidence (2d ed.), § 1960. It will be observed that all of the aforementioned four assignment instruments were received without objection, including the one which purports to be from the Reconstruction Finance Corporation to the plaintiff. Had the defendant doubted the genuineness of Shultz's signature to that instrument, or his right to have executed it on behalf of the Reconstruction Finance Corporation, its objection should have been voiced when the instrument was offered. It will be observed that the aforementioned letters, which apparently bear Shultz's signature, and those from the defendant to Shultz—all four of them pertaining to the

assignment of the note and mortgage from the Reconstruction Finance Corporation to the plaintiff—were received in evidence upon the defendant's offer. The defendant offered them upon its own volition, unconditionally, and without making any effort to limit their application to a specific purpose only. At no time did it question the genuineness of Shultz's signature, nor express doubt concerning his authority to conduct the negotiations mentioned in these letters. If Shultz's signature is not genuine, and if he lacked authority to negotiate with the plaintiff for the return to it of the note and mortgage, then the defendant could have had no purpose in introducing these documents into the record. If they were forgeries or unauthorized communications, it is reasonable to believe that the defendant would have sought their suppression instead of submitting them as proof. When the defendant produced them and pursued the above-indicated course, it vouched for the authenticity of these five documents to an even greater extent than does a party for the truthfulness of a witness whom he calls to the stand. Such a party may not be certain concerning the testimony which his witness will utter; but before the defendant offered in evidence these five documents, the signatures to them and the recitals contained in them were plainly visible. It is now too late for the defendant to question the signature of Shultz and the authority which he exercised in reassigning the note and mortgage to the plaintiff. The circumstances demand a conclusion that when the defendant introduced these documents in evidence it represented as genuine Shultz's signature, and, as regular, Shultz's conduct in reassigning the two instruments.

The facts before us do not indicate that the Reconstruction Finance Corporation ever owned the note

and mortgage mentioned in the complaint. Those instruments were merely pledged to that federal agency as partial security for a loan. It was not essential to the establishment of the validity of the alleged assignments from the Reconstruction Finance Corporation to the plaintiff that it should appear the plaintiff paid something for the assignment: *Gregoire v. Rourke*, 28 Or. 275 (42 P. 996), and *Collins v. Heckart*, 127 Or. 34 (270 P. 907). An assignee who has no beneficial interest in the chose in action and who is bound to account to his assignor for the proceeds recovered may, nevertheless, maintain an action in his own name: Clark on Code Pleading, p. 101, and 5 C. J., Assignments, p. 995, § 200. These principles are also recognized and applied by the law of mortgages: Wiltsie on Mortgage Foreclosure (3rd Ed.), § 92, and Jones on Mortgages (7th Ed.), § 1486. The first assignment of error possesses no merit.

■ The second assignment of error states: "The court disregarded the evidence of the witness Sewall and the documentary exhibits in connection therewith, and made a decree contrary to the facts shown thereby and against the evidence and against the law." The third assignment of error is thus expressed: "The court erred against the law and equities of the case in giving and rendering the decree herein, and said decree is erroneous because against proved facts in evidence." It will be observed that both of these assignments of error present virtually the same contention.

One M. B. Tarlow, who was president of the defendant, and its principal stockholder, testified that "in 1921 the United Manufacturing Company was in financial difficulties" and unable to meet the demands of its creditors. At that time, according to his testimony,

the defendant owed the Hibernia Commercial and Savings Bank between $21,000 and $22,000 on open account, $9,100 upon an obligation secured by a pledge of real property, and $5,000 upon a note secured by a pledge of some textiles. The total of these sums is $35,100 or $36,100, depending upon whether the open account sum was $21,000 or $22,000. The records of the bank indicate that July 22, 1921, the sum owing was $36,000. According to Tarlow, the defendant at that time effected a composition with at least some of its creditors whereby it paid them 35 percent of the sums owing. December 3, 1920, the defendant had conveyed to the Title and Trust Company of Portland the real property described in the complaint to secure the Hibernia Commercial and Savings Bank payment of sums due it. July 22, 1921, according to the records of the bank, it and the defendant effected a settlement of the defendant's liabilities to the bank whereby the defendant paid to the bank $7,665 cash, gave to it a note for $5,000 secured by a pledge of textiles known as the "ticking note", conveyed to the bank the real property previously mentioned at a valuation of $9,100, and gave to the bank Tarlow's personal note for $14,235. These sums total $36,000. Various documents and entries were prepared at that time which indicate the nature of this transaction. For instance, on August 4, 1921, the bank entered upon the ledger card of the defendant's account a credit equal to the balance then owing. On July 26, 1921, the defendant executed a deed conveying to the bank the aforementioned property, and on August 4, 1921, the Title and Trust Company executed a deed releasing its interest in the property. When the defendant delivered to the bank its deed it also delivered to it a letter stating that the consideration for the deed was "the cancellation of notes signed by

United Manufacturing Company payable to Hibernia Commercial and Savings Bank for the total amount of $9,100, which is the agreed net price at which the bank took over the above described property''. Concurrently therewith the defendant released to the bank its interest in a lease covering the property. The property was subject to a mortgage of $7,500 owned by one Josie Brinkerhoff. The defendant relies upon this transaction to substantiate its pleas of satisfaction and composition.

The next development occurred in the early part of 1925. About that time the defendant desired to reacquire the property. Although Tarlow, when testifying, sometimes employed the term ''composition'' as he referred to the 1921 transaction, he, nevertheless, protested strongly that the agreement contemplated that the defendant could reacquire the property at any time by paying the bank $9,100. Thus, he inferred that the conveyance was a mortgage. We are certain that the 1921 transaction was not a composition. As just stated, in 1925 the defendant desired to reacquire the property. In the preceding four years the bank had collected from the property the rental moneys: March 27, 1925, the bank's auditor sent to Mr. Tarlow, who, as we have seen, was the president and principal moving spirit of the defendant, a letter which stated:

''At Mr. Daly's request I am enclosing herewith a statement of income collected and expenses paid on the Goodsell's Addition property. Also statement of your indebtedness to the Bank as it will be on taking over the property. These figures are as of March 20, 1925. It will therefore be necessary to make some adjustments when a definite date is decided on.''

"United Manufacturing Company Property
Goodsell's Addition
From July 22, 1921 to March 20, 1925

Rents Collected from Building ........................ $ 9,450.00
Expenses:

Taxes and Assessments paid ..$1,796.65
Interest on $7,500 mortgage
   to 7/12/23 .................................. 1,189.95
Miscellaneous Expenses ........... 83.50   3,070.10

Net Income from Building ............. $ 6,379.90

Tarlow's Indebtedness to Bank
March 20, 1925.

Note dated 7/22/21 .................................................$14,235.00
Interest on above at six per cent ....................... 3,126.96
Goodsell's Addition Property taken in at ...... 9,100.00
Interest on above at six per cent ........................... 1,998.96
Mortgage taken up 7/12/23 ................................... 7,500.00
Interest on mortgage at seven per cent from
   7/12/23 ......................................................... 886.66

36,847.58
Less net income from building ................ 6,379.90

Net indebtedness ........................ 30,467.68"

June 2, 1925, the assistant cashier of the bank sent the defendant the following letter:

"We are enclosing a copy of the adjusted figures brot up to June 1, 1925. In accordance with our agreement the purchase price of the Goodsell Addition property was to be the net amount of the figures. As we prepare it these are $30,471.49. Will you please check these over and if there is any difference let me know.

"$100 has been paid as earnest money. $900 more is to be paid at the time the deal is closed and the balance is to be divided into two notes, one for $15,000 payable at the end of three years with interest monthly and one for $14,471.49, payable in 36 installments."

"United Manufacturing Company Property
Goodsell's Addition
From July 22, 1921 to June 1, 1925

| | | |
|---|---|---|
| Rents Collected from Building | | $10,125.00 |
| Expenses: | | |
| Taxes and Assessments | $1,958.54 | |
| Fire Insurance Premium | 274.00 | |
| Miscellaneous Expenses | 84.25 | 2,316.79 |
| Net Income from Building | | 7,808.21 |

Tarlow's Indebtedness to Bank
June 1, 1925

| | |
|---|---|
| Note dated 7/22/21 | $14,235.00 |
| Interest on Note at 6% | 3,295.39 |
| Goodsell's Addition Property taken in at | 9,100.00 |
| Interest on above at 6% | 2,106.65 |
| Brinkerhoff Mortgage bought | 7,500.00 |
| Interest on Mortgage at 7% | 2,042.66 |
| | 38,279.70 |
| Less Net Income from Building | 7,808.21 |
| | $30,471.49" |

The defendant made no objection whatever to the accuracy of the statements contained in these two communications, although, as will be observed from the second letter, it was invited to manifest its objections if it had any.

June 1, 1925, the contemplated transaction was consummated. On that day the bank entered upon its ledger sheet an indebtedness of the defendant to it of $29,471.49, and the defendant concurrently therewith delivered to the bank two notes signed by itself, one in the sum of $14,471.49 and the other in the sum of $15,000. The terms of payment of the two notes differed. The aforementioned sum of $29,471.49 is the

total shown in the letter of June 2, 1925, less $1,000 cash which was paid when the transaction was consummated. Thus, the transaction of 1921, roughly speaking, was unmade and the parties were restored to their 1921 positions, except the defendant was charged with interest upon its old debts and was credited with the net income produced by the property in the interval. Later, the $14,471.49 note was paid, and the $15,000 note, through its renewal on December 10, 1929, became the note upon which this action is predicated. The bank did not reconvey the real property to the defendant on June 1, 1925, but executed a certificate of trust wherein it acknowledged that it held title to secure payment of the two notes, and upon this Tarlow endorsed, "Dec. 10, 1929—Received back title to this property. United Mfg. Co. Inc., by M. Tarlow, Pres." Thus, the bank became, in effect, a mortgagee. December 10, 1929, the bank conveyed the property to the defendant and at that time the note and mortgage with which we are now concerned was signed by the latter.

Mr. Tarlow indicated that the need of the defendant for credit forced it to enter into the transaction of 1925. He seemed to believe that the defendant should not have been required to sign the note of $14,471.49, stating that the 1921 note of $14,235 was his personal note, and not that of the defendant. However, his 1921 note was apparently given for a corporate liability, and, although we have read the testimony carefully, we fail to find any indication that the corporation was forced to sign the 1925 note of $14,471.49. Indicating that no coercion whatever was exercised are the following circumstances: Immediately following the execution of the two 1925 notes, the bank sent monthly statements to the defendant, showing the installments of principal and interest that were due. Although the defendant was

thus regularly notified of the bank's demands, it never voiced the objection which it now asserts, according to our appraisal of the evidence. Unless we mistake the veracity of the witnesses, the defendant never raised the objection asserted by Tarlow from the witness stand until this suit was filed. To the contrary, the defendant made regular payments upon each of the two notes, thus eventually discharging entirely its liability upon the $14,471.49 note and defraying $5,000 of the indebtedness upon the $15,000 note, in addition to much of the interest. In fact, as will be observed from the second counterclaim, the defendant contends that it not only made all of the payments just indicated but also overpaid its liabilities to the bank to the extent of $6,753.71. Further indicative of lack of merit in these belated contentions is the fact that in 1929 the defendants obtained an extension of the time of payment of the $15,000 note by signing a new note and securing its payment by a mortgage upon the real property which at that time was conveyed to it. It is this note and mortgage which are the subject matter of this suit. Even Tarlow admitted that at that time he did not manifest the objections which we are now considering. Again, indicating lack of merit in these contentions, is the circumstance that on July 1, 1930, when the defendant sold two of the lots described in the mortgage for the sum of $7,500, it effected an arrangement with the bank whereby the latter released the two lots from the lien of its mortgage upon the payment to it of $3,431.42. Here, again, the defendant recognized its liability upon the note, but made no mention of any claim of coercion. We are clearly satisfied that the defendant was not coerced into the execution of these notes, and that the transaction of 1925 was fairly conducted. We believe it is manifest from the nature of the 1925 transaction that

the two notes, as well as the mortgage which was executed to secure payment of the $15,000 note, were based upon valuable considerations.

It will be observed that, whether the 1921 transaction be deemed an effort to effect a composition or a satisfaction of the old liability with new notes in 1925, when the notes were still unpaid, the parties rescinded whatever was done in 1921. The property was returned to the defendant for exactly the same consideration at which it had been received. In fact, the conduct of the parties indicates that both the bank and the defendant regarded the property as merely pledged to the bank as security for a loan. We do not believe that the 1921 transaction was either a composition or a satisfaction of the old indebtedness, but that it merely altered the documentary evidence of the old debt and gave the bank additional security.

All of the records of the bank, together with its ledger sheets, pertaining to the above transactions are a part of the record. The defendant contends that it has not received credit for all of the sums which it paid upon the above accounts. The careful circuit court judge before whom this suit was tried, in a comprehensive memorandum decision, stated that he "gave very close attention to the evidence as it was presented at the trial; has read and studied the briefs at length; has reviewed the testimony in considerable detail, and has, he believes, examined and reexamined the exhibits with all the care suggested and requested in defendant's briefs". His memorandum decision, after analyzing some of the challenged items of the accounts, states that he found no irregularity in the bank's accounts, and no merit in the defendant's contentions. We have read the transcript of evidence and have examined the exhibits. We have taken careful note of the criticism

made by the defendant of the bank's accounts. To some extent at least, the defendant's criticisms are based upon the testimony of Mrs. Thelma Burton, who was the bookkeeper for the defendant. Her testimony indicates that the bank has been overpaid approximately $6,700. But Mrs. Burton admitted that she had never seen the two aforementioned notes and did not know the rate of interest which they bore. She further admitted that, in determining the overpayments, she ignored all of the interest demands and one of the two notes. She, likewise, admitted that while she was making what she claimed to be overpayments many of the defendant's checks given to its creditors were being dishonored for want of sufficient funds. Manifestly, her testimony is incapable of supporting a conclusion that the notes were overpaid. We are convinced that the bank's records, submitted in support of its claims, are accurate, and that a balance of $10,000 of principal remains unpaid upon the note mentioned in the complaint.

The fourth and last assignment of error stated in the defendant's brief is thus expressed: "The court erred in refusing to consider the evidence that applied to the settlement and compromise of July, 1921 * * *." We have already reviewed the evidence to which, we believe, this assignment alludes. We have also expressed our belief that no composition was effected or intended in 1921. The subsequent conduct of the parties certainly indicates that defendant's indebtedness to the bank was not discharged in 1921, but that the documentary evidence of it was merely changed.

Having reached the above conclusions, it necessarily follows that the decree of the circuit court is affirmed.

CAMPBELL, C. J., and BEAN, BAILEY and RAND, JJ., concur.

BELT and KELLY, JJ., did not participate.