Argued November 20, 1958, reversed and remanded
January 27, 1960

# SPRINGER *v.* POWDER POWER TOOL CORPORATION

### 348 P. 2d 1112

*Donald S. Richardson,* Portland, argued the cause for appellant. With him on the brief were Philip A. Levin and Green, Richardson, Green & Griswold, Portland.

*Verne W. Newcomb,* Portland, argued the cause for respondent. With him on the brief were Sabin, Dafoe & Newcomb, Portland.

Before PERRY, Chief Justice*, and ROSSMAN, MC-ALLISTER** and O'CONNELL, Justices.

McALLISTER, C. J.

This is an action on behalf of three former employees of the defendant, Powder Power Tool Corporation, to recover wages claimed to be due because of a retroactive pay increase granted by a collective bargaining agreement between the defendant and the union representing its employees. The three employees assigned their claims to plaintiff who brought the action as assignee. The circuit court tried the case without a jury and found for the defendant. Plaintiff appeals.

---

* Chief Justice when argued.
** Chief Justice when decided.

As a result of an election held on March 27, 1953, District Lodge No. 24 of the International Association of Machinists, hereinafter referred to as the "union", was on April 6, 1953 certified by the National Labor Relations Board as the sole collective bargaining agent for defendant's employees. Immediately after such certification the union and defendant began to negotiate but a collective bargaining agreement was not executed until August 24, 1953. The agreement provided for increased wage rates and further provided that the agreement should be effective as of April 1, 1953. The pertinent portions of the agreement read as follows:

"ARTICLE XVII WAGES

"The wage rates which shall be effective during the term of this agreement are set forth in Appendix 'A' annexed hereto and made a part hereof, pursuant to provisions incorporated herein.

"ARTICLE XVII DURATION OF AGREEMENT

"This agreement shall become effective on April 1, 1953, and shall remain in full force and effect for a period of one (1) year. At the end of said year and the end of each yearly period thereafter, this Agreement shall be renewed automatically for periods of one (1) year unless either party gives written notice of a desire to modify, amend or terminate same at least sixty (60) days prior to the yearly effective date of this Agreement in which event such agreement shall terminate."

The three employees for whose benefit this action was brought were employed by defendant both before April 1, 1953 and for several months thereafter but were no longer in defendant's employ when the agreement was executed on August 24, 1953. They were paid to the time their employment was terminated

at the wage scale then in effect. The sole question is whether the retroactive pay increase applied to employees who were employed by defendant after April 1, 1953 but who were no longer working for defendant when the contract was entered into.

■ Since this is in essence an action by individual employees against their employer to recover retroactive pay claimed to be due under a collective bargaining agreement, we are not deprived of jurisdiction by § 301 of the Labor Management Relations Act of 1947, 29 USCA § 185①, as interpreted in *Textile Workers v. Lincoln Mills,* 353 US 448, 77 S Ct 912, 1 L ed2d 972. Assuming that § 301 is applicable and that a federal court might also have jurisdiction, the courts seem agreed that the state and federal jurisdiction is concurrent. *McCarroll v. L. A. County Etc. Carpenters,* 49 Cal2d 45, 315 P2d 322; *Coleman v. Local No. 570,* 181 Kan 969, 317 P2d 831; *Bridges v. F. H. McGraw & Company* (Ky), 302 SW2d 109; *McLean Distributing Co. v. Brewery & Bev. Drivers,* 254 Minn 204, 94 NW2d 514, 521; *Steinberg v. Mendel Rosenzweig Fine Furs,* 9 Misc2d 611, 167 NYS2d 685; *Anchor Motor Freight N. Y. Corp. v. Local Union No. 445,* 5 App Div2d 869, 171 NYS2d 511; *Gen. Bldg. Contrs' Assn. v. Local No. 542,* 370 Pa 73, 87 A2d 250,

---

① Sec. ,301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

254; and *Phila. Mar. Assn. v. Longshoremen's Assn.*, 382 Pa 326, 115 A2d 733.

In Lincoln Mills the court, in holding that the substantive law to be applied in suits under § 301 of the Labor Management Relations Act is federal law, said:

> "The question then is, what is the substantive law to be applied in suits under § 301 (a)? We conclude that the substantive law to apply in suits under § 301 (a) is federal law, which the courts must fashion from the policy of our national labor laws. See Mendelsohn, Enforceability of Arbitration Agreements Under Taft-Hartley Section 301, 66 Yale L. J. 167. The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. See Board of Commissioners v. United States, 308 U.S. 343, 351. Federal interpretation of the federal law will govern, not state law. Cf. Jerome v. United States, 318 U.S. 101, 104. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. See Board of Commissioners v. United States, supra, at 351-352. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights. * * *"

In the following cases it has been recognized that under the doctrine of Lincoln Mills federal law must be applied. See *Karcz v. Luther Manufacturing Co.*, 155 NE2d 441 (1959); *McCarroll v. L. A. County Etc., Carpenters*, supra; *Tool & Die Makers Lodge No. 78*

*Int. Assn. Mach. v. G. E.*, 170 F Supp 945 (Ed Wis) and *Ingraham Co. v. Local 260, Int. Union of E. R. & M. Workers*, 171 F Supp 103, 107 (DC Conn).

However, it is not necessary to choose between state and federal law in this case. We find ourselves in the same position as the supreme court of Massachusetts in *Karcz v. Luther Manufacturing Co.*, supra, which, like the case at bar, was a suit by individual employees to enforce their rights under a collective bargaining agreement. In that case the court said:

> "* * * We have been guided in the decision of the present cases by general principles of contract law which appear to be applied with uniformity in this and other jurisdictions and would presumably form a part of any body of Federal law which may be developed under any view of what was said in the Lincoln Mills case at pages 456-457 of 353 U.S., at pages 917-918 of 77 S. Ct."

The impact of Lincoln Mills on cases in this field was not raised in the trial court or in this court and we will not extend our discussion of it here. The case has provoked much comment. See Gregory, *The Law of the Collective Agreement*, 57 Mich L Rev 635; Bickel and Wellington, *Legislative Purpose and the Judicial Process: The Lincoln Mills Case*, 71 Harv L Rev 1; Meltzer, *The Supreme Court, Congress, and State Jurisdiction Over Labor Relations*, 59 Col L Rev 269, 276; Hays, *State Courts and Federal Preemption*, 23 Mo L Rev 373, 398; and Note, 71 Harv L Rev 1169, 1172.

■ Although there are several theories on which the right is granted it is now generally recognized that an employee may sue his employer to collect benefits accruing to the employee under a collective labor

agreement made between his employer and the union. See 2 Williston, Contracts (3rd ed) 985, § 379A and Annotation, 18 ALR2d 352. The various theories which have been applied are succinctly summarized in 3 Buffalo L Rev 270, as follows:

"Several theories were developed early under which the individual employee could secure access to the courts. First, a collective agreement, while not thought to be itself enforceable by anyone, was considered to be a 'custom or usage' which could be incorporated by the individual into his personal employment contract. Second, the agreement was treated by a few courts as a 'mutual general offer to be closed by specific acceptance.' Third, some courts thought the collective agreement itself was enforceable by the individual on the ground that the employees were parties to the agreement, the union merely negotiating it on their behalf as a duly authorized agent. Fourth, a majority of courts allowed the individual to sue on the agreement itself on the theory that it was a third party beneficiary contract between the union and the employer for the benefit of the individual members of the union."

The great weight of modern authority adopts the legal theory that the employee is a third party beneficiary of the labor agreement. *McKay v. Loew's Inc.,* 182 F2d 170 (9th Cir 1950); *Marranzano v. Riggs Nat. Bank,* 184 F2d 349 (DC Cir 1950); *Sublett v. Henry's Turk & Taylor Lunch,* 21 Cal2d 273, 131 P2d 369; *Dierschow v. West Suburban Dairies, Inc.,* 276 Ill App 355; *Yazoo & M. V. R. Co. v. Sideboard,* 161 Miss 4, 133 S 669; *Hudak v. Hornell Industries,* 304 NY 207, 106 NE2d 609; *Gulla v. Barton,* 164 App Div 293, 149 NYS 952; *H. Blum & Co. v. Landau,* 23 Ohio App 426, 155 NE 154; *Johnson v. American Railway Express Co.,* 163 SC 191, 161 SE 473; *Cross Mountain Coal Co. v. Ault,* 157 Tenn 461, 9 SW2d 692; 2

Williston, Contracts (3rd ed) 985, § 379A and Annotation, 18 ALR2d 352. There are also many cases holding that individual employees may sue under a collective bargaining agreement without mentioning the theory under which the right is recognized. See *Ryan v. Ryan*, 156 Kan 348, 133 P2d 119; *Tynan v. KSTP, Inc.*, 247 Minn 168, 77 NW2d 200; *Atkinson v. Thompson*, (Tex Civ App) 311 SW2d 250, 255 and *Beatty v. Chicago, B. & Q. R. Co.*, 49 Wyo 22, 52 P2d 404. In at least a few instances there has been a conscious recognition that these cases do not fit precisely into the traditional concept of third party beneficiary actions and that the rule applied may be *sui generis*. See *J. I. Case Co. v. Labor Board*, 321 US 332, 64 S Ct 576, 88 L ed 762; *Association of Westinghouse v. Westinghouse El. Corp.*, 210 F2d 623 (3rd Cir 1954), aff'd 348 US 437, 75 S Ct 488, 99 L ed 510; and *Woodward Iron Company v. Ware*, 261 F2d 138, 141 (5th Cir 1958).

Defendant relies heavily on *Shelley v. Portland Tug & Barge Co.*, 158 Or 377, 76 P2d 477, but we think the case is clearly distinguishable. In that case, decided in 1938, an employee sued to recover benefits which he claimed were due him under a contract made between his employer and a union. In holding that the employee could not sue on the contract, this court relied almost entirely on the admitted fact that no employee of the company was a member of the union. However, if the case is inconsistent with what is said here, it must yield to modern developments in the law of labor relations. *Pfeifer v. Lowes Lumber Co.*, 206 Or 115, 291 P2d 744, was an action by individual employees against their employers to recover vacation pay alleged to be due under the provisions of a collective bargaining agreement. The right of the

employees to bring an action to recover benefits due them under the contract was not challenged in this court and not mentioned in the opinion.

We now reach the terminal question of whether plaintiff's assignors are entitled to retroactive pay for the period during which they worked after April 1, 1953.

■ This court subscribes to the objective theory of contracts. *Rushlight Co. v. City of Portland,* 189 Or 194, 219 P2d 732. Restatement, Contracts, § 230 p. 310 explains that theory as follows:

"The standards of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean."

■ The agreement in this case states "This agreement shall become effective on April 1, 1953 and shall remain in full force and effect for a period of one (1) year." It specifies that wage rates "shall be effective during the term of this agreement." We believe this language is clear and free from ambiguity. Since the parties have agreed that the contract should be effective as of April 1, 1953, we are bound to construe it as if it were made on that date. If it had been entered into on April 1, 1953, plaintiff's assignors without question would have been entitled to pay at the new rate for they were then employees of the company. By providing that the contract should be retroactive to that date, the same result was accomplished and

employees for whose benefit this action is brought are entitled to the retroactive pay. See *McKinley v. Johnstown Traction Co.*, 58. Pa D & C 346. See also *McNeil v. Peoples Life Ins. Co.*, (MCA DC 1945) 43 A2d 293; *Lookout Oil and Refining Co. v. Guffey* (ED Tenn) 12 Labor Cases (CCH) 70, 315; United States Steel Products Co., 5 Lab Arb 355 (1946) and C. B. Cottrell & Sons Co., 12 Lab Arb 97 (1949).

Defendant was not required to make the agreement retroactive and whether the new wage rates were to be retroactive probably was the subject of bargaining. The agreement might have limited the retroactive aspect to employees who were employed at the time the agreement was executed. If the parties had so intended it is reasonable to presume that they would have said so. Finding no such limitation we are not at liberty to insert one.

The parties have agreed on the amount due plaintiff if his assignors were entitled to the retroactive pay increase. The case is reversed and remanded with directions to enter judgment for the plaintiff, together with a reasonable attorney's fee to be determined by the court.