Argued and submitted April 7, 2005, affirmed August 30, 2006

In the Matter of the Compensation of
Kristan L. Anderson, Claimant.
## UNITED AIRLINES,
*Petitioner,*

*v.*

## Kristan L. ANDERSON,
*Respondent.*

### 03-01590; A124055

142 P3d 508

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Donald M. Hooton argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder, Judge, and Breithhaupt, Judge pro tempore.

LINDER, J.

## LINDER, J.

Claimant, a union member, was compensably injured in April 2001 and was awarded temporary total disability (TTD) benefits. After her injury, claimant's union and employer negotiated a collective bargaining agreement (CBA) that included a wage increase for claimant and other employees. The wage increase was made retroactive to July 2000. Thus, the effect of the CBA was to increase claimant's hourly wage rate as of the date of her injury. The Workers' Compensation Board (board) ordered employer to calculate claimant's TTD using the retroactive wage rate. Employer seeks review, arguing that, under the pertinent statutory scheme, claimant's TTD should be calculated using the wage that employer was paying claimant on the date she was injured, rather than the increased wage that retroactively applied to the date of her injury through the later-negotiated CBA. For the reasons explained below, we affirm.

The facts are undisputed. At the time of her injury in April 2001, claimant was working for employer and making $12.75 per hour. After her injury, employer paid claimant TTD benefits and calculated the amount of claimant's TTD using the hourly wage rate she was paid on the date that she was injured.[1] Thirteen months later, in May 2002, employer and the union finalized a CBA that included a wage increase retroactive to July 2000. Employer notified claimant of the new "2000-2004" agreement and the fact that claimant, as an employee covered by the agreement, was "due retroactive pay," plus six percent interest, for the period July 12, 2000 through May 14, 2002. Employer explained in that notice that the amount of claimant's retroactive pay would be "determined by calculating the difference between what you were paid based on the Old Rates and what you should have been paid based on the New Rates." The statement attached

---

[1] Actually, employer originally calculated claimant's TTD benefits at $12.00 per hour. At the hearing before the administrative law judge, employer acknowledged that claimant was earning $12.75 per hour when she was injured and that, to the extent employer used a wage rate of $12.00 rather than $12.75 per hour, its TTD calculation was incorrect. We therefore describe the calculation using the wage that employer agrees it was paying claimant as of the the date of injury and that employer concedes it should have used in its initial TTD calculation.

to the notice detailed the increased wage rates for the various time periods covered by the agreement and identified the wage rate for April 2001 as $14.51 per hour.

After receiving employer's notice, claimant requested a hearing, claiming that her TTD benefits should be calculated using the $14.51 per hour wage rate negotiated under the CBA. The administrative law judge (ALJ) agreed. On review to the board, the board affirmed that portion of the ALJ's order. Relying on *Springer v. Powder Power Tool Corp.*, 220 Or 102, 110, 348 P2d 1112 (1960), the board observed that a retroactive pay increase in a CBA must be construed "as if [the agreement] were made on the date the agreement says that it became effective." The board therefore concluded that the 2000-2004 CBA was the contract in force on the date of claimant's injury and that claimant's TTD benefits should be calculated using the wage due under the CBA.

The correctness of the board's determination presents us with an issue of statutory construction. ORS 656.210 describes how to calculate TTD benefits for an injured worker. Of significance to this case, the statute directs TTD to be "based on the wage of the worker at the time of injury." ORS 656.210(2)(d)(A). In other words, the TTD calculation is based on a particular measure (the worker's "wage") at a particular point in time (when the worker was injured). *See also* ORS 656.210(2)(a)(A) (a worker's weekly wage is determined by multiplying the daily wage the worker "was receiving" by the number of days per week the worker was regularly employed). Also of significance to this case, the term "wages," as used in this context, has a precise meaning. It is defined as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident[.]" ORS 656.005(29). The phrase "in force," as used in this context, means "valid, operative, binding." *Webster's Third New Int'l Dictionary* 887 (unabridged ed 2002). Thus, a worker's wage at the time of injury is not what the worker actually received on the date of injury. Rather, it is what the worker was *contractually* entitled to receive on that date as a result of a valid, operative, and binding agreement.

Employer argues that the statute has a temporal focus—that the contract of hiring "in force at the time of the

accident" means "whatever arrangement was in force at that time, not one that came into force later with retroactive operation." According to employer, its calculation of claimant's TTD award therefore was correct because "the rate the insurer calculated at the outset of the claim accurately reflected the worker's wage under the contract in effect at the time of injury." Employer emphasizes that the new CBA, although it was denominated a contract for 2000-2004, did not exist in April 2001 when claimant was injured, and it could not and did not take force until it was later drafted and executed.

Claimant responds that an initial problem with employer's argument is that the record does not support the factual premise that a binding contractual wage agreement was in existence—and thus "in force"—on the date of the injury. Rather, when claimant was injured in April 2001, negotiations between the union and employer for a CBA covering 2000 through 2004 were underway; those negotiations were not finalized until May 2002. According to claimant, claimant and the other represented employees were working without the benefit of an existing CBA at the time of her injury. Claimant further argues that, even if there was a contractual agreement of some kind in place when claimant was injured, the retroactivity clause of the newly negotiated CBA supersedes that agreement and is the binding legal agreement between employer and its represented employees as to the amount of wages owed on the date of claimant's injury.

Employer replies to claimant's argument by retreating from its factual premise (*i.e.*, that a formal contractual agreement was in place at the time of claimant's injury), but otherwise standing its ground. According to employer, claimant may have been working without a contract "as that term is used in labor-management parlance." Employer urges, however, that claimant "was necessarily working under some *mutual understanding* about what she was to receive in her next paycheck. That understanding would not change *unless and until* there [was] a subsequent labor agreement." (First emphasis added; second emphasis in original.)

The issue framed by the parties' arguments is which of two agreements should be deemed the one "in force at

the time of the accident," within the meaning of ORS 656.005(29). Is it the mutual understanding of some sort that existed on the date that claimant was injured, or is it the later-negotiated CBA that included a retroactive wage increase that legally bound the employer to pay claimant an increased wage as of the date of claimant's injury?

On the facts of this case, we agree with claimant that the later-negotiated CBA qualifies as the contract "in force"—*i.e.*, valid, operative, and binding—on the date of claimant's injury. When claimant was injured, no CBA or other formal contractual agreement controlled the wages that the represented employees—including claimant—were owed. Instead, the union and employer were actively negotiating a CBA that would control employee wages for 2000 through 2004, the time period in which the injury occurred. By its terms, the newly negotiated CBA was made retroactive to July 2000, a date that preceded claimant's injury.

In *Springer*, the Oregon Supreme Court determined the legal effect of a similar retroactivity clause. In that case, as here, the plaintiffs were represented employees who worked for an employer while the employer and the union negotiated a CBA. The negotiations took several months, but eventually resulted in a CBA that provided for increased wage rates that were made retroactive to a particular date. Although the plaintiffs worked for the employer after that date and were paid at the wage scale "then in effect," they were not still employed when the CBA was executed. The employer therefore refused to pay them the retroactive wages, and the employees brought an action to recover the retroactive pay to which they believed they were entitled. The Supreme Court agreed that they were entitled to the increased wage rate under the CBA:

> "Since the parties have agreed that the contract should be effective as of April 1, 1953, we are bound to construe it as if it were made on that date. If it had been entered into on April 1, 1953, plaintiff's assignors without question would have been entitled to pay at the new rate for they were then employees of the company. By providing that the contract should be retroactive to that date, the same result was accomplished and employees for whose benefit this action is brought are entitled to the retroactive pay."

*Springer*, 220 Or at 110-11.

The reasoning in *Springer* dictates the result here. The statutory scheme for calculating TTD benefits expressly looks to the *contractual* wage agreement negotiated between the employer and employee as the basis on which TTD is calculated. ORS 656.210(2)(d)(A); ORS 656.005(29). Here, as part of the CBA covering the relevant time period, employer and the union expressly negotiated a retroactive wage that encompassed the date of claimant's injury. *Springer* controls the legal effect of that retroactivity provision and establishes that the wage increase is valid, operative, and binding on the date of claimant's injury, just as if the CBA had been signed and executed as of July 2000. We therefore agree with the board that the retroactive CBA is the "contract of hiring in force at the time of the accident," within the meaning of ORS 656.005(29) and ORS 656.210(2)(d)(A). The board correctly ordered employer to calculate claimant's TTD benefits based on the $14.51 per hour wage set by the 2000-2004 CBA.

Affirmed.