Tammy TURNER and Ronald Turner, Plaintiffs-Appellants,

v.

GENE DENCKER BUICK-PONTIAC, INC., Gene Dencker and Carl Georgoff, Defendants,

BLACKHAWK STATE BANK, Defendant-Respondent.

Court of Appeals

*No. 99–3174. Submitted on briefs September 12, 2000.—Decided November 16, 2000.*

2001 WI App 28

(Also reported in 623 N.W.2d 151.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Carla O. Andres* of *Andres Law Office, LLC* of Portage.

On behalf of the defendant-respondent, the cause was submitted on the brief of *R. Duane Harlow* of *Hayes & Heiber, LLP* of Beloit.

On behalf of Wisconsin Bankers Association, a non-party brief was filed by *John E. Knight, James E. Bartzen* and *Kirsten E. Spira* of *Boardman, Suhr, Curry & Field LLP* of Madison.

Before Vergeront and Deininger, JJ., and William Eich, Reserve Judge.

¶ 1.   VERGERONT, J.   Tammy and Ronald Turner appeal the circuit court's judgment dismissing their claim that Blackhawk State Bank violated WIS. STAT. § 427.104(1)(f) (1997–98)[1] by disclosing to a credit bureau information concerning a debt of the Turners that was known to the Bank to be reasonably disputed without disclosing the fact of the dispute. The court concluded the Bank had satisfied its obligation under the statute by informing the credit bureau initially by telephone that the debt was disputed, even though the Bank thereafter sent to the credit bureau a monthly report of the increasing debt without an indication the

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

debt was disputed. We conclude that each monthly report to the credit bureau of the debt was a disclosure of the existence of a debt within the meaning of § 427.104(1)(f), and the Bank violated this subsection by not disclosing with each report that the debt was disputed. We therefore reverse and remand.

## BACKGROUND

¶ 2.   The debt at the center of this dispute was a loan the Turners obtained to finance the purchase of an automobile from Gene Dencker Buick-Pontiac, Inc. The loan was assigned to the Bank. During the following months, a series of problems arose with the car, leading the Turners to suspend payment. The Turners sued both Gene Dencker and the Bank, but their claim against Gene Dencker was addressed in a separate trial and is not relevant to this appeal. The Turners' claim against the Bank for a violation of WIS. STAT. § 427.104(1)(f) was tried to the court, and the evidence was as follows.[2]

¶ 3.   The Turners notified the Bank of their dispute with Gene Dencker. The Bank contacted both the Turners and Gene Dencker and determined the Turners' dispute of the debt was reasonable.

¶ 4.   At the time relevant to this dispute, the Bank provided debt information to the Credit Bureau of Madison by means of monthly electronic tape transmittals. The information the credit bureau received was in turn transmitted to another entity that supplied the information to vendors nationwide. The information transmitted each month to the credit bureau on the electronic tape replaced the information contained

---

[2] We do not summarize evidence on other claims against the Bank that are not involved in this appeal.

in the previous month's transmission for that particular debt. The Bank's electronic tape system did not allow certain types of information to be included in the transmission. Although several "keyword changes" were available in the system for alteration of specific information, there were none to indicate that a debt was disputed. The Bank decided not to incur the additional expense required to mark a dispute on an account in the electronic tape system.

¶ 5.   The credit bureau had the capacity to input a code on a debt for which it had received an electronic tape transmittal from the Bank to show the debt was disputed, but, unless the credit bureau then manually froze that account, the next monthly transmittal would override and replace the existing information on the debt. Thus, if the next transmittal did not indicate the debt was disputed, the credit bureau files would no longer contain the information that the debt was disputed. The credit bureau normally does not freeze an account unless the creditor requests it.

¶ 6.   The Bank's practice was to telephone the credit bureau directly to inform them when a debt was reasonably disputed, and ask it to indicate that information in the credit bureau's file. It was not the Bank's practice to request in writing that the credit bureau do this nor to do any follow-up to its request. Consistent with this practice, Ed Hansen, a representative of the Bank, testified that he called the credit bureau in November 1997 and asked that the credit bureau place a dispute code on the Turners' account for this debt. Although the credit bureau coded the Turners' credit file as discussed in response to Hansen's call, the tape the Bank transmitted to the credit bureau the next month overrode that code: it replaced all the information about the Turners' debt, including the code

showing it was disputed, with new information on the debt, which did not include the information that the debt was disputed. The result was that after November the credit bureau's information on the Turners' debt, and thus, the information the credit bureau transmitted to others, did not indicate there was a reasonable dispute over the Turners' debt. Instead, each month's report carried with it mounting delinquency charges and an indication that the payments were an additional month past due.

¶ 7. Hansen testified it was his understanding that the information on the disputed status of the Turners' debt, which he conveyed to the credit bureau in the November 1997 phone call, would be permanently contained in the Turners' account with the credit bureau until he called to ask that it be changed. He did not specifically request the designation of disputed status be permanent because he assumed it would be. He also testified that the credit bureau employee with whom he spoke did not tell him a change would have to be made in the tape sent to the credit bureau to permanently reflect the debt was disputed, and he did not tell the employee the Bank's system could not do that. Nor did the employee tell him, he testified, that the Bank could ask the credit bureau to freeze the Turners' account.

¶ 8. Clara McFall testified she was the credit bureau employee with whom Hansen spoke in November 1997 about the Turners' account. She testified that her normal procedure, when a person asks that a particular debt be indicated as disputed, is to explain that the person has to ensure the same change is made in the following months unless the credit bureau manually freezes the account so subsequent tapes will not change the designation of the debt as disputed. At trial

she testified she could not recall whether she told Hansen this; however, in her deposition testimony, read at trial, she stated she had told Hansen the Bank had to correct its tape information and that the Bank had the option of freezing the account. It is not disputed that Hansen did not elect to have the Turners' account frozen.

¶ 9. After Hansen's November 1997 telephone call, the Bank did not attempt to verify the debt was designated as disputed on a continuing basis. The Bank did not learn until August 1998 that this had not been done. At that time, the Turners' account with the credit bureau, based on the transmissions from the Bank, had a delinquency rating that indicated the account was four months or more past due.

¶ 10. The trial court found the Bank reasonably believed that the designation of disputed status would stay in the credit bureau records of the Turners' debt. The trial court concluded the Bank did not violate WIS. STAT. § 427.104(1)(f). The court construed the statute to "not require the bank repeatedly to look into what the credit reporting agency is doing with [the debt information it provides]." The court determined the Bank's actions were reasonable with respect to its treatment of the Turners' account and it was not required to use "extraordinary practices" to assure that the disputed status of a debt was being accurately recorded by the credit bureau.

## DISCUSSION

¶ 11. The Bank agrees with the Turners that the issue is governed by WIS. STAT. ch. 427. The issue on appeal concerns the proper construction of WIS. STAT. § 427.104(1)(f), which provides:

Prohibited practices. (1) In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment, a debt collector may not:

. . . .

(f) Disclose or threaten to disclose information concerning the existence of a debt known to be reasonably disputed by the customer without disclosing the fact that the customer disputes the debt.

¶ 12. The Bank does not contend that it is not a "debt collector." It concedes the Turners' debt was reasonably disputed, it knew the debt was reasonably disputed, and, therefore, it was prohibited from disclosing information concerning the debt to the credit bureau without disclosing the fact that the Turners' disputed the debt. The Bank's position, with which the trial court agreed, is that, after its initial call to the credit bureau asking it to code the Turners' debt as disputed, it did not have an obligation to disclose the disputed status of the debt in the subsequent monthly reports to the credit bureau. Phrased in terms of the statutory language, the Bank contends that the subsequent monthly reports did not constitute "disclos[ing] information concerning the existence of [their] debt," because they had already disclosed the disputed nature of the debt to the credit union.[3] In contrast, the Turners argue that each monthly report "disclose[d] information concerning the existence of [the] debt" and,

---

[3] The Wisconsin Bankers Association has submitted an amicus curiae brief. Because the Bank's brief and the amicus brief make the same arguments, we do not refer separately to the amicus brief.

therefore, the Bank was obligated to disclose in each report that the debt was reasonably disputed.

¶ 13.   The construction of a statute in relation to a given set of facts presents a question of law, which we review de novo. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). If the facts are disputed, we accept the findings made by the trial court unless they are not clearly erroneous. *See* WIS. STAT. § 805.17(2). In this case, we accept as not clearly erroneous the trial court's implicit finding that the credit bureau employee did not tell Hansen the Bank had to make changes in the electronic tape it transmitted each month to reflect the disputed status of the debt on an ongoing basis, or that the Bank had the option of freezing the account. We also accepted the court's implicit finding that Hansen believed his request to the credit bureau was sufficient to permanently indicate in the Turners' file with the credit bureau that the debt was disputed. We therefore construe the statute in relation to these findings of disputed fact and to the undisputed facts.

¶ 14.   WISCONSIN STAT. § 427.104(1)(f) has not been interpreted by Wisconsin courts, and our research has uncovered no cases from other jurisdictions that construe similar statutory language. We therefore begin with the general principles of statutory construction, according to which our purpose is to discern the intent of the legislature. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). To discern legislative intent, we first consider the language of the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, we apply that to the case at hand and do not look beyond the statutory

language to ascertain its meaning. *Id.* A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Id.* If a statute is ambiguous, we look to the scope, history, context, subject matter, and object of the statute in order to ascertain legislative intent. *Id.*

¶ 15. We conclude that the constructions advanced by both parties are reasonable and the statute is therefore ambiguous. Since the parties have not presented us with any pertinent legislative history, we focus on the object of the statute.

¶ 16. WISCONSIN STAT. § 427.104 is part of the Debt Collection chapter of the Wisconsin Consumer Act. WIS. STAT. § 427.101. The legislature "clearly intended the Wisconsin Consumer Act to assist consumers, particularly those of limited means, in combating unfair business practices." *Kett v. Cmty. Credit Plan, Inc.*, 228 Wis. 2d 1, 18, 596 N.W.2d 786 (1999). The express purposes are as follows:

> The Wisconsin Consumer Act (WIS. STAT. chs. 421–427) is intended to protect consumers from "unfair, deceptive, false, misleading and unconscionable practices by merchants," WIS. STAT. § 421.102(2)(b), and "to permit and encourage the development of fair and economically sound consumer practices in consumer transactions," WIS. STAT. § 421.102(2)(c). The legislature also mandates that chapters 421 to 427 are to be "liberally construed and applied to promote their underlying purposes and policies." WIS. STAT. § 421.102(1).

*Kett* 228 Wis. 2d at 18. Another express purpose of the Wisconsin Consumer Act is to "coordinate the regulation of consumer credit transactions with the policies of

the federal consumer credit protection act." WIS. STAT. § 421.102(2)(d).

¶ 17. Focusing more specifically on WIS. STAT. § 427.104(1)(f), the evident purpose of this subsection is to protect consumers from the adverse effects of a negative credit history of a debt, when the reason for non-payment is that the debt is reasonably disputed. If the Bank does not have an obligation to report the disputed status of a debt with each report of the debt, but only with the first report, then it is more likely to happen, as it did in this case, that creditors and vendors are receiving information about a debt without receiving the information that it is a disputed debt.

¶ 18. The Bank's primary objection to the Turners' construction is that, in the Bank's view, it places the burden on the Bank to monitor the conduct of the credit bureau. However, we do not agree with this characterization. The Bank knew the monthly reports it sent to the credit bureau did not state the debt was disputed. Indeed, the Bank had made a conscious choice, based on economic considerations, not to have the capability in its system to indicate on the monthly transmissions that a debt was disputed. It also knew that each monthly transmission on a particular debt replaced the information from the previous transmission. The Bank did not know its monthly transmissions would override, and, thus erase, the credit bureau's coding that the debt was disputed. Rather, the Bank assumed it would not, although there is no testimony that it was told this or inquired about this. Hansen acknowledged he did not tell the credit bureau that he wanted the disputed code to be permanently contained in the Turners' account because he assumed it would be. But, again, there is no testimony that anyone from the credit bureau told him the credit bureau's file

would continue to indicate the debt was disputed even though the Bank sent monthly reports on the debt that did not indicate it was disputed. In short, the Turners' construction does not place the burden on the° Bank to monitor the credit bureau's conduct; rather, it places the burden on the Bank to make sure each report it sends to the credit bureau on a disputed debt indicates that the debt is disputed.

¶ 19.    Along the same lines, the Bank argues that it was the credit bureau's responsibility, not the Bank's, if the credit bureau released information on the Turners' debt without indicating the debt was disputed. The Bank asserts the Turners have recourse against the credit bureau under the Fair Credit Reporting Act, 15 U.S.C. § 1681 (1997),[4] and should look to the credit bureau, not to the Bank, for a remedy.

¶ 20.    However, the credit bureau's obligations under the Fair Credit Reporting Act do not lessen the Bank's obligations under WIS. STAT. § 427.104(1)(f). Under the federal act, credit bureaus are required to "adopt reasonable procedures . . . with regard to the confidentiality, accuracy, relevancy, and proper utilization of [consumer credit] information. . . ." 15 U.S.C. § 1681(b). They must verify adverse credit information when preparing a consumer report, unless the adverse information was received within the three-month period preceding the prepared report. 15 U.S.C. § 1681I. Credit bureaus may be independently sued for negligent failure to comply with these requirements. *See* 15 U.S.C. § 1681o; *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7ᵗʰ Cir. 1994). Thus, the obligations of the credit bureau under the federal act are indepen-

---

[4] All references to the United States Code are to the 1997 edition unless otherwise noted.

dent of the obligations of the Bank under § 427.104(1)(f).

¶ 21.  We need not decide whether the credit bureau violated its statutory obligations because we are not presented with an "either or" proposition as the Bank suggests. A creditor, when acting as a debt collector and transmitting information to a credit bureau concerning the existence of a debt known to be reasonably disputed, must comply with WIS. STAT. § 427.104(1)(f), whether or not the credit bureau fulfills its statutory obligations with respect to the information it receives. By the same token, the fact that the credit bureau may not have in place reasonable procedures concerning the accuracy of the information on the Turners' debt it received from the Bank in the subsequent monthly transmissions, or may not have verified the accuracy of the information it received as it was required to do, does not relieve the Bank of any obligation it has under § 427.104(1)(f). This, we conclude, is the approach that best fulfills one of the purposes of the Wisconsin Consumer Act—to "coordinate the regulation of consumer credit transactions with the policies of the federal consumer protection act." WIS. STAT. § 421.102(2)(d).

¶ 22.  We therefore focus on the Bank's conduct rather than that of the credit bureau. Relying on *Associates Fin. Servs. Co. v. Hornik*, 114 Wis. 2d 163, 167, 336 N.W.2d 395 (Ct. App. 1983), the Bank contends that reasonableness is the standard, that its conduct met that standard, and the Turners' construction would impose an unreasonable burden on it. In *Associates*, we addressed the prohibited practice under WIS. STAT. § 427.104(1)(g)—communicating with the debtor in ways that "can reasonably be expected to threaten or

397

harass the customer." *Associates,* 114 Wis. 2d at 168. We stated: "Creditors have a duty to act reasonably when collecting debts from their debtors, and in sec. 427.104 the legislature codifies rules describing the duty of care debt collectors owe to debtors." *Id.* at 167.

¶ 23. We agree that WIS. STAT. § 427.104(1)(f) should not be construed to impose an obligation on the Bank that is unreasonable. However, we do not agree with the Bank and the trial court that it is unreasonable to require the Bank to have a system in place, electronic or otherwise, that accurately reports the disputed status of a debt to credit bureaus. Nor do we agree that, if the Bank chooses a system that does not have this capability, it is unreasonable to require the Bank to do more than request the credit bureau to designate the debt as disputed, without further inquiry, without follow-up, and knowing the Bank was transmitting tapes each month that replaced the information transmitted to the credit bureau the preceding month.

¶ 24. Although we accept the court's implicit finding that the Bank believed its call to the credit bureau was sufficient to correct the fact that the Bank's system could not transmit the information that a debt was disputed on the electronic tapes that monthly transmitted the debt information, it does not necessarily follow that the Bank therefore satisfied its obligation under WIS. STAT. § 427.104(1)(f). As the Turners point out, WIS. STAT. § 425.301(3) provides a defense based on error in only limited circumstances:

> Notwithstanding any other section of chs. 421 to 427, a customer shall not be entitled to recover specific penalties provided in s. 425.302(1)(a), 425.303(1), 425.304(1) or 425.305(1) if the person violating chs. 421 to 427 shows by a preponderance

of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The Bank does not dispute that it has not made the showing required by § 425.301(3). We agree with the Turners that, based on the undisputed facts, the Bank did not maintain procedures reasonably adapted to avoid transmitting information about a reasonably disputed debt to the credit bureau without disclosing that the debt was disputed.

¶ 25. We conclude WIS. STAT. § 425.301(3) indicates the legislature's intent to limit consideration of the good faith error of a debt collector in violating WIS. STAT. § 427.104 to the circumstances specified in § 425.301(3). If we take the Bank's good faith into account in deciding how to construe § 427.104(1)(f), we are, in effect, broadening the defense in § 425.301(3) beyond that which the legislature intended. We therefore decline to do so.

¶ 26. We are satisfied that the specific purpose of WIS. STAT. § 427.104(1)(f), and the more general purposes of the Wisconsin Consumer Act as a whole, are better effectuated if each transmission from the Bank to the credit bureau reporting a debt is considered a "disclosu[re] of information concerning the existence of the debt," carrying with it the obligation to disclose the disputed status of the debt, if the Bank knows the debt is reasonably disputed. Each transmission that contains information about a debt that is reasonably disputed without disclosing the disputed status of the debt has the potential to injure the consumer in the very ways this subsection was intended to prevent. It is reasonable to place on the debt collector the obligation to convey the disputed status with each report on the

debt the debt collector transmits.[5] If the debt collector chooses a system that cannot report the disputed status of a debt, it is reasonable to place on the debt collector the responsibility to see that the disputed status is nevertheless disclosed with each report on the debt, along with the attendant liability for failure to do so, subject to WIS. STAT. § 425.301(3) and other defenses, if any.

¶ 27.   Applying the statute thus construed to the facts of this case, we conclude the Bank did violate WIS. STAT. § 427.104(1)(f). As we have already stated, we also conclude it does not have a defense under WIS. STAT. § 425.301(3). We therefore reverse and remand to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and remanded.

---

[5] Alternatively, a debt collector could simply elect to cease reporting on the debt while it remains in a disputed status.