Kathy HOFFMAN, Bob Baranowski, Scott Hexom, Mary Ellen Heus and Jeffrey Schultz, Petitioners-Respondents,†

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent-Co-Appellant,

NEW BERLIN EDUCATION ASSOCIATION, Intervenor-Respondent,†

NEW BERLIN PUBLIC SCHOOL DISTRICT, Intervenor-Appellant.

Court of Appeals

No. 00–1368. Oral argument February 9, 2001.—Decided March 21, 2001.

2001 WI App 87

(Also reported in 625 N.W.2d 906.)

†Petition to review denied.

1

On behalf of the respondent-co-appellant Wisconsin Employment Relations Commission, the cause was submitted on the brief of *John D. Niemisto*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *William H. Ramsey*.

On behalf of the intervenor-appellant, the cause was submitted on the briefs of *Michael Aldana* and *Luis I. Arroyo* of *Quarles & Brady LLP* of Milwaukee. There was oral argument by *Michael J. Spector*.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Edward R. Garvey* of *Garvey & Stoddard, S.C.* of Madison.

On behalf of the intervenor-respondent, the cause was submitted on the brief of and oral argument by *Anthony L. Sheehan, Wisconsin Education Association Council* of Madison.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1.   BROWN, P.J.   This case involves a dispute between members of a teachers' union and a school district. After the teachers of the New Berlin Education Association (NBEA) worked without a contract for over

a year, the NBEA bargaining representatives and the New Berlin Public School District (District) reached a tentative agreement for the duration of 1997–2001. This agreement resulted in the 1997–1999 and 1999–2001 collective bargaining agreements. The ensuing ballot to the members of the teachers' union called for the members to either accept both collective bargaining agreements or reject them in one vote; in other words, the membership was not given the option of voting on each contract separately. The circuit court held that the ratification process created one contract in excess of two years in violation of WIS. STAT. § 111.70(4)(cn) (1999–2000).[1]

¶ 2.　In the briefs of the parties, it appeared that the issue was whether the statute prohibited the ratification process used in this case. Petitioner Kathy Hoffman has not departed from this initial position. But, at oral arguments, intervenor NBEA posited that the real issue is not how the contracts were ratified. Rather, the crux of the matter is whether the applicable statute prohibits integrated contracts of the type involved in this case. We hold that WIS. STAT. § 111.70(4)(cn) does not prohibit the ratification process used by the union in this case. Nor does the statute prohibit the use of integrated contracts as a mechanism to implement collective bargaining agreements.

¶ 3.　In 1997, NBEA and the District failed to agree to a July 1, 1997–June 30, 1999 collective bargaining agreement for professional school employees. As a result, the Wisconsin Employment Relations Commission (WERC) attempted to mediate a settlement, which also failed. The District implemented a Qualified Economic Offer pursuant to WIS. STAT. § 111.70(1)(nc)

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

for 1997–99 in which it maintained minimum salary increases and fringe benefits. The New Berlin teachers worked for over a year without a contract. During the summer of 1998, NBEA and the District ratified a tentative agreement for 1997–1999 and 1999–2001. However, NBEA declared the agreement null and void because it was in excess of two years.

¶ 4. In October 1998, NBEA bargaining representatives and the District ratified a new tentative agreement covering 1997–1999 and 1999–2001. The ballot gave the union membership the option of either rejecting or accepting both collective bargaining agreements; that is, the union membership could not vote on each contract separately.[2]

¶ 5. The union membership voted to accept the two bargaining contracts. Some of the teachers in the NBEA, who we will call "Hoffman" for the sake of brevity, apparently did not like the way the vote went. They first filed a petition with WERC challenging the validity of the collective bargaining agreements. They got no immediate help from the union at this time, however, because the majority of the NBEA leadership favored ratification. At the hearing, Hoffman claimed that due

---

[2] The ballot stated:

YES, I VOTE TO RATIFY THE 1998–99 PORTION OF THE 1997–98 (sic) MASTER AGREEMENT WITH THE NEW BERLIN BOARD OF EDUCATION, AND THE 1999–2001 MASTER AGREEMENT WITH THE NEW BERLIN BOARD OF EDUCATION.

NO, I VOTE NOT TO RATIFY THE 1998–99 PORTION OF THE 1997–98 (sic) MASTER AGREEMENT WITH THE NEW BERLIN BOARD OF EDUCATION, AND THE 1999–2001 MASTER AGREEMENT WITH THE NEW BERLIN BOARD OF EDUCATION.

At the hearing, it was clarified that the parties intended the ballot to read "1997–99."

to the way the collective bargaining agreements were ratified, the parties had agreed to one 3-year[3] collective bargaining agreement in violation of WIS. STAT. § 111.70(4)(cn). This statute plainly says that, except for the initial collective bargaining agreement between the parties, all bargaining contracts concerning school district professional employees shall be for a term of two years. WERC found for the District, stating that the parties validly agreed to two 2-year contracts. The circuit court reversed, stating that "[w]hile the initial collective bargaining agreements may have been for two 2 year contracts, the way the contracts were presented to the voters created a three year contract, thus violating the plain meaning of [§ 111.70(4)(cn)]." On appeal, WERC challenges the circuit court's ruling. The District has intervened on WERC's side, and NBEA, which has changed leadership since the petition with WERC was filed, has intervened on Hoffman's side.

¶ 6. We begin our analysis with a discussion of the standard of review. The various standards of review of an agency's conclusions of law are well established and need not be repeated here. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992). Hoffman argues that we should review WERC's decision de novo because this case is clearly one of first impression for WERC and WERC has no special expertise or experience. WERC and the District contend that we should apply a great weight or due weight standard because, while this is a case of first impression, WERC has special expertise in the area of collective bargaining.

---

[3] Hoffman claims that the agreement is for three years because it was ratified in 1998, rather than 1997.

¶ 7. We determine that a de novo standard of review is appropriate where, as here, the statute in question does not address the agency's general legislative directive to promote labor peace, nor does it invoke the agency's authority. Rather, the statute implementing standard duration of collective bargaining agreements is a product of the Joint Committee on Finance and its concern with fiscal control over school budgets. Because school budget issues are not an area within WERC's expertise, nor has WERC had experience interpreting WIS. STAT. § 111.70(4)(cn), we will engage in a de novo review.

¶ 8. The statute at issue, WIS. STAT. § 111.70(4)(cn), states in relevant part,

> *Term of professional school employee agreements.* Except for the initial collective bargaining agreement between the parties, every collective bargaining agreement covering municipal employees who are school district professional employees *shall be for a term of 2 years* expiring on June 30 of the odd-numbered year. (Emphasis added.)

Before we engage in the interpretation of this statute, we have some preliminary housekeeping to do. Hoffman's initial position is that the statute unambiguously limits the term of professional school employee agreements to two years per contract. Hoffman then argues that, all along, the parties intended to strike a three-year deal in clear violation of the statute. This is evidenced by the bargaining history of the parties, the intertwined provisions of the agreements and ultimately by the vote itself. The fatal flaw in the ballot, Hoffman argues, is that the membership had to accept both agreements or none at all. This manifested

the ultimate intent of the parties to agree to a three-year deal. On the other hand, Hoffman asserts, if the membership had been presented with the option to vote separately on each contract, the statute would have been satisfied. The circuit court concurred in this conclusion.

¶ 9.   We see Hoffman's initial argument as basically raising a question of fact despite the assertion by all the parties involved that we are dealing solely with a statutory interpretation issue. In other words, we are satisfied that Hoffman is attempting to show how the principals to the contract intended for the contract to be three years in length.

¶ 10.   This argument fails because it is WERC which was given the responsibility of making the findings of fact regarding the intent of the principals in the first instance. Hoffman petitioned WERC for a declaratory ruling on whether the contract had run afoul of the statute and WERC made findings of fact regarding intent. In reviewing an agency's factual findings, we will uphold an agency's determination if it is supported by substantial evidence, such that reasonable minds could arrive at the same conclusion as the agency. *Madison Gas & Elec. Co. v. PSC*, 109 Wis. 2d 127, 133, 325 N.W.2d 339 (1982). Here, WERC specifically found that the parties intended to reach agreement on two 2-year contracts. As evidence, it pointed to two signed two-year contracts in the record, the text of the tentative agreement referring to "the 1999–2001 Master Agreement," and the ballot which explicitly stated that two 2-year contracts were being presented. Therefore, as to this argument, we hold that WERC's finding with respect to the intent of the parties is supported by substantial evidence.

¶ 11.  We now respond to Hoffman's assertion that WIS. STAT. § 111.70(4)(cn) gives union membership the right to vote on each contract separately. On its face, the statute does not address the process of ratification as a method of satisfying its duration requirement. Nor does Hoffman point to any legislative history that would show the legislature's intent to require each contract to be ratified in a separate vote. While requiring separate ballots seems reasonable and good public policy, we conclude that it is not required by the statute in question.

¶ 12.  Now, we get to what we consider to be the major issue in this case. At oral argument, NBEA stated that the form of the ballot was probably irrelevant to its position. The ballot was predetermined by the package deal that came out of the tentative agreement reached by the parties. Thus, the two collective bargaining agreements were linked not by the one-vote format of the ballot, but by the provisions of the agreements themselves.[4] Moreover, there is ample evidence in the record that both parties understood a package deal was being presented to the membership for ratification. The issue according to NBEA is not whether the *ratification process* passes statutory muster, but whether integration of collective bargaining agreements is permitted under WIS. STAT. § 111.70(4)(cn). Hoffman also asserted at oral argument that as a matter of law this statute prohibits integration.

¶ 13.  According to the general principles of statutory construction, our purpose is to discern the intent of

---

[4] The tentative agreement had provisions that phased in over the duration of the two contracts. For example, it provided that one-third of teachers would get laptops in 1998–1999, one-third in 1999–2000 and one-third in 2000–2001.

the legislature. *State ex rel. Garel v. Morgan*, 2000 WI App 223, ¶ 15, 239 Wis. 2d 8, 619 N.W.2d 285. We first look to the language of the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, we do not resort to extrinsic evidence to ascertain the statute's meaning. *Turner v. Gene Dencker Buick-Pontiac, Inc.*, 2001 WI App 28, ¶ 14, 240 Wis. 2d 385, 623 N.W.2d 151. A statute is ambiguous if it can be understood in two or more different senses by reasonably well-informed persons. *Id.* In that case, we use extrinsic sources, such as legislative history, to discern the intent of the legislature. *Id.* Depending upon the facts in a given case, the same statute may be ambiguous in one context and unambiguous in another. *Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 241, 448 N.W.2d 256 (Ct. App. 1989).

¶ 14.  On its face, WIS. STAT. § 111.70(4)(cn) is unambiguous. It clearly states that collective bargaining agreements must have a duration of two years. WERC argues that each of the two agreements complies with the plain language of the statute. Conversely, NBEA contends that the two contracts are inextricably linked and such integrated contracts violate the plain language of the statute. We conclude that the theories advanced by both parties are reasonable and the statute is therefore ambiguous as applied to these facts. The parties have presented us with pertinent legislative history and we will focus on that to ascertain legislative intent.

¶ 15.  WISCONSIN STAT. § 111.70(4)(cn) is part of the Municipal Employment Relations Act (MERA). The key policy underlying MERA is the encouragement of voluntary resolution of labor disputes, which promotes

labor peace and harmony. *See* § 111.70(6). Significantly, § 111.70(4)(cn)[5] came out of the Joint Committee on Finance as an effort to make collective bargaining agreements coincide with the state's two-year budget cycle. *See* 1993–95 Budget Issue Paper #1031, regarding "Limitations on the Term of Municipal Employe Collective Bargaining Agreements" at p. 3 (May 24, 1993). It was thought that a standardized term and expiration date for collective bargaining agreements would enable the legislature to impose fiscal restraint on school districts in a uniform manner. *Id.* The two-year limit would also reduce the incentive to delay in reaching a settlement as new comparables developed in other localities. *Id.* Thus, the policy of § 111.70(4)(cn), as the parties agreed at oral argument, is largely fiscal in nature.

¶ 16.   Under this interpretation of the statute, we do not see how integrated collective bargaining agreements contravene the intent of the legislature. Although provisions of the agreements are linked, each separate contract has a two-year term. Each contract coincides with the biennium budget. There is simply nothing in the plain language of the statute or in its underlying fiscal policy that prohibits integration.

¶ 17.   Hoffman also expresses concern that ratification of multiple year contracts would create a slippery slope for the duration of municipal employees' collective bargaining agreements that would obfuscate the purpose of the entire statute. We do not view this as a realistic problem. It is not in the interest of teachers to negotiate far into the future for the simple reason that they would lose out on comparable benefits packages negotiated in other districts. Nor do school boards

---

[5] WISCONSIN STAT. § 111.70(4)(cn) was enacted by 1993 Wis. Act 16, § 2207ar and became effective July 1, 1996.

have an incentive to commit future school boards to collective bargaining agreements when school budgets are uncertain.

¶ 18.    We conclude that integration of collective bargaining agreements is not precluded by WIS. STAT. § 111.70(4)(cn). We believe that as a practical matter, this holding comports with actual practice in the process of collective bargaining. Although contracts must be for a term of two years, negotiations do not follow such strict guidelines. Collective bargaining is a fluid process that requires flexibility. As NBEA noted in its brief, it has long been the practice throughout the state that when parties are unable to reach an agreement and are without a contract for an extended period of time, the parties will settle the outstanding year of a collective bargaining agreement and the subsequent collective bargaining agreement at the same time. Our interpretation of § 111.70(4)(cn) does not change this long-standing practice. This result promotes regularity in the bargaining process and labor peace, which is consistent with the broad mandate of MERA.

*By the Court.*—Judgment reversed.