265 Wis.2d 744 (2003)
2003 WI App 153
668 N.W.2d 133
Brenda BEAUDETTE, Teresa K. Col'on, and Mitchell Lang, Plaintiffs-Respondents-Cross-Appellants,
v.
EAU CLAIRE COUNTY SHERIFF'S DEPARTMENT, Defendant-Appellant-Cross-Respondent.
No. 02-2916.
Court of Appeals of Wisconsin.
Oral argument May 12, 2003.
Decided June 3, 2003.
*750 On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of and oral argument by James R. Scott of Lindner & Marsack, S.C. of Milwaukee.
On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the brief of Carol S. Dittmar and Teresa E. O'Halloran of Garvey, Anderson, Johnson, Geraci & Mirr, S.C. of Eau Claire. There was oral argument by Carol S. Dittmar.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
*751 ¶ 1. CANE, C.J.
The Eau Claire County Sheriff's Department appeals a judgment awarding three former employees back pay and the employees cross-appeal the award of their attorney fees. The employees resigned from the department while it was negotiating a new collective bargaining agreement with the union. The previous contract, however, had expired, and when the employees left, the department and the union had not reached a new agreement. After the new agreement was signed, the employees sought, and were eventually awarded, retroactive pay by the circuit court.
¶ 2. On appeal, the department argues the court erred when it determined that (1) the employees' claims were not barred by the statute of limitations; (2) the employees were not required to exhaust their remedies under the collective bargaining agreement; and (3) the collective bargaining agreement provided wages to the employees. The department also argues WIS. STAT. ch. 109,[1] under which the employees sought relief, was inappropriate to resolve this dispute. In addition, the employees cross-appeal the circuit court's award of attorney fees, claiming the court erred when it reduced the amount of fees they requested.
¶ 3. We conclude that the employees were not required to exhaust their contractual remedies because the department repudiated the collective bargaining agreement when it failed to process the employees' grievance. Further, we determine that the employees' claims were not barred by the statute of limitations and that they were entitled to back pay under the new agreement. In addition, we are satisfied WIS. STAT. ch. 109 was an appropriate vehicle to resolve this dispute. *752 Finally, the court did not err in its award of attorney fees. Therefore, we affirm the judgment.

Background
¶ 4. Brenda Beaudette, Teresa Col'on, and Mitchell Lang all worked for the Eau Claire County Sheriff's Department until February or June 1998. They were members of the municipal employees' union and worked under the terms of collective bargaining agreements. When one of these agreements expired on December 31, 1995, the department and the union had not negotiated its successor, and did not do so until July 1998. The new agreement provided for increased wages and its effective dates were January 1, 1996, through December 31, 1999. All current employees received retroactive wage increases.
¶ 5. On August 5, 1998, the County personnel committee denied retroactive pay to employees who had stopped working for the County during the negotiations. On September 25, the union filed a grievance requesting back pay on the employees' behalf. On both September 30 and October 7, the department sent the union correspondence that it was taking the position that the employees lacked standing to grieve. The union notified the employees of the department's stance on October 10 and did not take any further action on the employees' behalf.
¶ 6. On July 10, 2000, the employees filed a notice of claim under WIS. STAT. § 893.80 and on December 29 commenced a WIS. STAT. ch 109 wage claim in circuit court. Both parties moved for summary judgment. The department argued that (1) the employees failed to exhaust administrative remedies under the collective bargaining agreement; (2) their wage claim was barred *753 by the statute of limitations; (3) they were not entitled to back pay under the new agreement; and (4) that the employees' claim was not for "wages" under ch. 109. The employees claimed the new agreement entitled them to back pay because they worked for the department during the new agreement's effective dates. They also argued the department was estopped from denying back pay because it had been given to another employee who left the bargaining unit during the interim period, but still worked for the County.
¶ 7. The trial court awarded the back pay. It concluded the employees did not have to exhaust their remedies under the collective bargaining agreement because the department had refused to allow their grievance to proceed. In addition, the court concluded the WIS. STAT. § 893.44(1) two-year statute of limitations of had not begun to run until October 10, when the union representative informed the employees their grievance had been denied. The court further determined the statute of limitations was tolled by 120 days because the employees filed the notice of claim under WIS. STAT. § 893.80. Also, the court concluded the employees were entitled to $7,872.06[2] in back pay under the new bargaining agreement. Finally, the court determined WIS. STAT. ch. 109 applied to the employees' claim, although it refused to award penalties allowed under that chapter and reduced the employees' claimed *754 attorney fees from $14,087 to $9,500 and awarded costs of $2,312.18. The department appeals and the employees cross-appeal.

Discussion
[1]
¶ 8. We first address the department's claim the employees failed to exhaust their contractual remedies and therefore should have been barred from seeking relief in court. Whether the employees exhausted their remedies under the collective bargaining agreement requires us to interpret the agreement. This presents a question of law that we review independently of the circuit court. See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co., 2000 WI 26, ¶ 22, 233 Wis. 2d 314, 607 N.W.2d 276.
¶ 9. Under the collective bargaining agreement, the employees are represented by the Wisconsin Professional Police Association/Law Enforcement Employee Relations Division. The agreement contains a grievance and arbitration procedure. Grievances that involve the interpretation or application of the agreement must be submitted to the personnel director, who then presents the dispute to the personnel committee. After the committee has made a decision, either party may take the grievance to arbitration by the Wisconsin Employment Relations Commission.
[2-6]
¶ 10. Grievance and arbitration procedures included in a collective bargaining agreement are presumed to be exclusive remedies unless the parties to the agreement expressly agree that they are not. See Mahnke v. WERC, 66 Wis. 2d 524, 529, 225 N.W.2d 617 (1975) (citing Vaca v. Sipes, 386 U.S. 171, 184 n.9 *755 (1967)). An employee who fails to exhaust exclusive remedies is foreclosed from suing the employer on a claim arising from the contract. See Mahnke, 66 Wis. 2d at 529. Courts have recognized three exceptions to this rule. First, when the employer's conduct amounts to a repudiation of the collective bargaining agreement, the employee may proceed directly against the employer in court. Vaca, 386 U.S. at 185. In such a situation, the employer is estopped by its own conduct to rely on the contractual procedures as a defense to the employee's trial court claim. Id. The second exception is where the union has sole power under the contract to invoke the higher stages of the grievance procedures and where the employee has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance. Id. Finally, an employee may proceed against an employer in court after demonstrating that pursuing the contractual remedies would be futile. See D'Amato v. Wisconsin Gas Co., 760 F.2d 1474, 1488 (7th Cir. 1985).
[7]
¶ 11. The collective bargaining agreement is silent regarding the exclusivity of its remedies; therefore, we assume the parties intended them to be exclusive. See Mahnke, 66 Wis. 2d at 529. We must then decide what consequences the parties' actions have under the agreement and Vaca. While the employees did not exhaust their contractual remedies, the parties dispute who is at fault for this failure. The department argues the blame lies with the employees, acting through the union, for failing to take the matter to arbitration as either party is allowed to do under the contract. The employees, however, contend that the department repudiated the contractual remedies when it claimed the *756 employees had no standing to grieve and, as a result, they should be able to pursue their contractual claim in court.
[8-10]
¶ 12. An employer repudiates the contractual remedies when it anticipatorily rejects those remedies. See Bailey v. Bicknell Minerals, Inc., 819 F. 2d 690, 692 (7th Cir. 1987). An employer has repudiated the contractual remedies when it no longer considers them binding and therefore frustrates the complaint's processing. See id.; D'Amato, 760 F.2d at 1488. The only evidence of repudiation is the county personnel director's correspondence with the union. The meaning of words in a document is a question of law we review de novo. Felland v. Sauey, 2001 WI App 257, ¶ 18, 248 Wis. 2d 963, 637 N.W.2d 403. Further, whether this language shows the department repudiated the contractual remedies is also a question of law. See Ide v. LIRC, 224 Wis. 2d 159, 166, 589 N.W.2d 363 (1999) (whether facts fulfill a legal standard is a question of law).
[11]
¶ 13. In his September 30 letter, the personnel director told the employees' union representative that, "The county maintains that since neither the union nor the former employees have standing under Article 5 to grieve this matter, the county will not answer the grievance and will not process any further." In the October 7 letter, the director informed the union representative the matter would not be placed on the next personnel meeting agenda. The parties dispute the meaning of these letters. The department contends these statements were merely part of the "give and take of day to day labor relations" and it should not be penalized for taking an extreme position early in the dispute. On the other hand, the employees claim that *757 these letters amount to the department's repudiation of the contractual remedies. We agree with the employees.
¶ 14. Under Article Five of the agreement, a grievance regarding the agreement's applicability must be submitted to the personnel director, who gives it to the personnel committee to resolve. After receiving the grievance, the department failed to follow the agreement's procedures by refusing to process it and not submitting it to the committee. These actions frustrated the grievance and amounted to a rejection of the contractual remedies. If, for instance, the department had submitted the claim to the personnel committee, and the committee, acting according to the grievance procedures, decided that the employees lacked standing, the department would not have repudiated the contract. Instead, the department refused to follow the agreed upon procedures and as a result, the employees may bypass the contractual remedies.
¶ 15. The department argues the employees should nonetheless be required to take the matter to arbitration in order to exhaust their remedies. We disagree. First, the agreement states a party may take the grievance to arbitration within thirty days of the personnel committee's decision. No decision was made. Second, the employees tried to exhaust their remedies and the department frustrated that attempt. As a result, the employees could properly bring their claim in circuit court, and the department may not defend by arguing it was barred because of a failure to exhaust the agreement's remedies.
[12]
¶ 16. Next, we address the department's argument that the employees' claim was barred by the statute of limitations. Interpreting the statute of limitations presents a question of law that is reviewed *758 independently of the circuit court. See Ghashiyah v. Prudential Ins. Co., 198 Wis. 2d 699, 702, 543 N.W.2d 538 (Ct. App. 1995). WISCONSIN STAT. § 893.44(1) requires that any action to recover unpaid wages, salary or compensation for personal services be commenced within two years of the claim's accrual. The employees filed a notice of claim under WIS. STAT. § 893.80(1)(a). The circuit court determined this tolled the statute of limitations for 120 days under Colby v. Columbia County, 202 Wis. 2d 342, 357, 550 N.W.2d 124 (1996), and the department does not challenge this ruling. Therefore, the parties agree that the employees' claim must be commenced within two years and 120 days of its accrual or be barred.
¶ 17. The parties disagree on the date the claim accrued. Essentially, the department contends because the wage claim is based on a contract, like all other contract claims it accrued on the date of the breach, not when the aggrieved party discovered the breach. See CCL Assocs. v. Arrowhead Pacific Corp., 174 Wis. 2d 604, 617, 497 N.W.2d 115 (1993). This date, according to the department, is August 8, 1998, the day the personnel committee denied retroactive pay to former employees. If this is the date the claim accrued, the employees' claim would have been time barred on December 6, 2000, twenty-three days before they filed their complaint.
¶ 18. The employees, on the other hand, suggest that the "discovery rule" should apply in this case, making a policy argument that it is necessary to avoid an unjust result. They offer two dates on which their claim accrued. The first is September 25, 1998. This is the date they initiated their grievance, which the employees argue shows they had enough information regarding the breach of the agreement to file a complaint. *759 As a result, their claim would have become barred on January 23, 2001. Alternatively, the employees suggest that the claim accrued on October 10, 1998, the date the union representative notified one of the employees that the department had rejected their grievance. The employees contend that they did not have enough knowledge of the department's refusal to allow the grievance until this date and therefore had no claim until then. If the claim accrued on October 10 it was not barred until February 7, 2001. The circuit court accepted October 10 as the date of accrual.
[13, 14]
¶ 19. We take a different approach. "A cause of action accrues when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it." Sopha v. Owens-Corning Fiberglas Corp., 230 Wis. 2d 212, 223, 601 N.W.2d 627 (1999). Examining this basic principle in light of the record, we conclude the claim accrued on September 30, 1998, the date the department notified the union representative that its position was that the employees lacked standing to grieve and that it would not answer the grievance or process it any further. This was the date the department repudiated the contractual remedies. Before this date, the department would have been able to defend the claim on the basis of the employees' failure to exhaust the agreement's remedies, and a circuit court would have been unable to hear the case. In other words, the employees did not have a present right to enforce their claim until the department repudiated the contractual remedies. The department did this on September 30. As a result, the employees had until January 28, 2001, to *760 file their claim. It is not barred by the statute of limitations because they filed their claim on December 29, 2000.
[15]
¶ 20. Next, the department argues that the provisions of WIS. STAT. ch. 109 are inapplicable to the lawsuit. Chapter 109 requires that employers pay their employees within thirty-one days of earning wages. WIS. STAT. § 109.03(1). It allows employees to bring claims against their employers for unpaid wages and also to collect penalties under certain circumstances. WIS. STAT. § 109.02(5), 109.11. It is clear that the employees are seeking wages, as defined in WIS. STAT. § 109.01(3). The department, however, contends this chapter's purpose is merely to ensure employees are paid their wages when they are due. See Jacobson v. American Tool Cos., 222 Wis. 2d 384, 400, 588 N.W.2d 67 (Ct. App. 1998). Chapter 109, the department claims, is only an enforcement mechanism and should not be used to resolve the underlying dispute whether the wages are owed under the new agreement. The application of a statute to a set of facts is a question of law that we review de novo. Shannon v. Shannon, 150 Wis. 2d 434, 447, 442 N.W.2d 25 (1989).
[16]
¶ 21. We would agree with the department, at least in the collective bargaining context, if the department had not repudiated the contractual remedies. If, for instance, the dispute had proceeded to arbitration, the employees had prevailed, and the department refused to pay the back pay, then WIS. STAT. ch. 109 would be an enforcement mechanism only. Because the department repudiated the contractual remedies, allowing the employees to proceed directly to court, we *761 conclude that ch. 109 is an appropriate vehicle to resolve the underlying dispute whether the wages were owed.
¶ 22. This situation is similar to that in German v. DOT, 2000 WI 62, 235 Wis. 2d 576, 612 N.W.2d 50. There, several state patrol officers brought a WIS. STAT. ch. 109 claim seeking back wages for their meal breaks. Id., ¶ 1. The officers claimed they were on duty during these breaks according to Department of Workforce Development regulations. Id. The DOT argued ch. 109 was not the appropriate forum to resolve this issue and, instead, the officers should have brought their claim under the administrative procedures of WIS. STAT. § 103.005 to allow the DWD to determine if those wages were actually owed. Id., ¶ 2. In rejecting this claim, the supreme court undertook an analysis of both chs. 109 and 103 and concluded the officers' claims could be completely resolved under ch. 109. Id., ¶ 16.
¶ 23. Much of the supreme court's reasoning in German depended on the demonstrated interrelationship between WIS. STAT. chs. 103 and 109. See id. at ¶¶ 13-16. This might suggest that the apparent lack of any such relationship between ch. 109 and, for instance, WIS. STAT. § 111.70, which governs municipal employee relations, would weigh against allowing the complete resolution of the dispute under ch. 109. In fact, in our earlier resolution of German, we addressed the DOT's argument that allowing the officers' claims to proceed under ch. 109 would open the door to increased litigation by in part pointing out that municipal collective bargaining agreements could not be enforced by ch. 109. German v. DOT, 223 Wis. 2d 525, 543, 589 N.W.2d 651 (Ct. App. 1998).
¶ 24. In support of this statement, we relied on the supreme court's decision in AFSCME Local 1901 v. *762 Brown County, 146 Wis. 2d 728, 432 N.W.2d 571 (1988). See German, 223 Wis. 2d at 543. There, a municipal union sought WIS. STAT. ch. 109 penalties when the county failed to pay back wages pursuant to an arbitration agreement within § 109.03(1), a thirty-one-day requirement. Local 1901, 146 Wis. 2d at 729-30. The county sought to defend the claim under the provisions of WIS. STAT. § 111.70(7m)(e), which allows a municipal employer to avoid civil liability for failing to implement an arbitration award by showing good cause. Id. at 735-36. The court determined that the county could raise the defense. Id. at 735. The issue in Local 1901, however, was not whether the provisions of § 111.70 applied to the exclusion of WIS. STAT. ch. 109 but, rather, whether a municipal employer could raise the good cause defense in a ch. 109 claim. Id. at 729. The court noted, "The issue centers on whether ch. 109 governs exclusively or is considered in conjunction with sec. 111.70(7m)(e)." Id. The court determined ch. 109 did not govern exclusively, but that it was subject to § 111.70(7m)(e).
[17]
¶ 25. We are satisfied that, at least under the circumstances presented here, WIS. STAT ch. 109 is available to resolve the underlying dispute. The ch. 109 claim was allowed in Local 1901, subject to the WIS. STAT. § 111.70 defense. The underlying dispute whether the employer owed wages, however, had already been resolved by arbitration. That is likely what would have happened here had the department not repudiated the contractual remedies. The repudiation allowed the employees to bypass the contractual remedies and proceed directly to court. Thus, they were entitled to resolve any dispute whether they would have been entitled to back pay in court. It would be a waste of judicial resources to *763 require the employees to bring an action to interpret the contract and then, if they prevailed, a separate wage claim. When an employer repudiates the contractual remedies of a collective bargaining agreement, employees are allowed to proceed under ch. 109 if they are seeking back pay.
[18, 19]
¶ 26. Next, we must address whether the employees are entitled to back pay under the agreement. This requires us again to interpret the collective bargaining agreement, a question of law we review independently of the circuit court. See Wisconsin Label, 233 Wis. 2d 314, ¶ 22. The primary goal in contract interpretation is to determine and give effect to the parties' intention at the time the contract was made. Id., ¶ 23. When the language is unambiguous, we apply its literal meaning. Id.
¶ 27. The collective bargaining agreement's effective dates are January 1, 1996, to December 31, 1999. Section 14.01 of the agreement states, "A wage rate schedule based on classification of work is attached covering the calendar year of 1996 to 1999, entitled `Appendix A.'" The agreement does not specifically mention retroactive pay for employees, current or former. The department argues the agreement's lack of specificity on this issue makes it unclear what the parties intended with regard to retroactive pay. Rejecting this argument, the circuit court determined because the employees worked for the department during the contract's effective dates, they were entitled to wages for that time. We agree.
¶ 28. The issue presented here appears to be one of first impression in Wisconsin. The Oregon Supreme Court has addressed the issue, however, and we find its reasoning persuasive. In Springer v. Powder Power Tool *764 Corp., 348 P.2d 1112 (Or. 1960), the court faced a nearly identical situation. The employer and the union entered into a contract on August 24, 1953, but made its effective date April 1, 1953. Id. at 1113. Between these dates, several employees quit and sought back pay based on the contract's new pay scale, which had been awarded to employees who had not left. Id. The Oregon court reasoned:
The agreement in this case states "This agreement shall become effective on April 1, 1953 and shall remain in full force and effect for a period of one (1) year." It specifies that wage rates "shall be effective during the term of this agreement." We believe this language is clear and free from ambiguity. Since the parties have agreed that the contract should be effective as of April 1, 1953, we are bound to construe it as if it were made on that date. If it had been entered into on April 1, 1953, plaintiff's assignors without question would have been entitled to pay at the new rate for they were then employees of the company. By providing that the contract should be retroactive to that date, the same result was accomplished and employees for whose benefit this action is brought are entitled to the retroactive pay.
Id. at 1116.
¶ 29. Similarly, the effective dates of this contract are January 1, 1996, to December 31, 1999. It is undisputed the employees worked for the department during this time period. Had the contract been signed on its effective start date, the employees would have received their raises. We do not discern any ambiguity in the contract because of its failure to address retroactivity. Instead, the contract is unambiguous. People who worked in the bargaining unit during the term of the agreement are entitled to be paid according to its terms.
*765 [20]
¶ 30. Finally, we must address the employees' cross-appeal of the circuit court's determination of their attorney fees. The employees requested approximately $14,000 in fees and the court awarded $9,500. The court is authorized to award attorney fees in WIS. STAT. ch. 109 wage claims as "reasonable expenses" pursuant to § 109.03(6). Jacobson, 222 Wis. 2d at 398-99. In Jacobson, we determined attorney fees should be allowed as reasonable expenses because it would defeat ch. 109's purpose to require an employee to pay attorney fees from recovered wages. Here, the employees make the same argument, saying that by not awarding all the requested fees, the employees will be forced to use their recovery to pay their attorneys.
[21-23]
¶ 31. We defer to the trial court's attorney fee determination because it has the "advantageous position to observe the amount and quality of the work performed and has the expertise to evaluate the reasonableness of the fees." Allied Processors v. Western Nat'l Mut. Ins. Co., 2001 WI App 129, ¶ 46, 246 Wis. 2d 579, 629 N.W.2d 329. We will sustain the award unless the trial court erroneously exercised its discretion. Standard Theaters, Inc. v. DOT, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984). A court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational conclusion. Burkes v. Hales, 165 Wis. 2d 585, 590, 478 N.W.2d 37 (Ct. App. 1991).
¶ 32. In making its decision, the court first noted that its decision was difficult because of the amount of requested fees, $14,087, was greater than the amount in controversy, $7,031.24, and that courts in general have a hard time determining what is reasonable in *766 terms of the time expended on wage claims. Next, the court pointed out that the employees' three attorneys spent 112 hours on the case, much of which was devoted to research and intraoffice conferences. The court then stated, "When all is said and done, there really is not much law to research on the subject." The court also noted there was a lack of case law regarding attorney fees in wage claim cases. Next, the court weighed the fact an attorney fees award was appropriate in order to give attorneys incentive to accept wage claims with the fact that it would be unfair to penalize the employer in this case because it thought it had a valid defense to the employees' claims. The court then listed the twelve factors found in 42 U.S.C. § 1988 used to assess the reasonableness of attorney fees.[3] Finally, the court added, "After considerable reflection; weighing the above factors; and bearing in mind that this is a straight forward case that did not require extensive discovery; this court believes the plaintiff's should recover attorney's fees of $9,500.00 plus out of pocket costs of $2,312.18."
¶ 33. We conclude this represents a proper exercise of the court's discretion. Most notably, the court expressed concern that the amount of time the employees' attorneys spent on research was unreasonable, given the absence of case law in the area. Further, the court noted the case did not require extensive discovery, was not especially difficult, and compared the amount recovered with the amount of fees requested. These are appropriate considerations when evaluating an attorney *767 fee request. See SCR 20:1.5.[4] The court did not erroneously exercise its discretion when awarding the employees' attorney fees.
By the Court.Judgment affirmed. No costs on appeal.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] This figure represents the total of the court's award to each of the employees: $2,791.50 + 3,124.20 + 1956.36 = $7,872.06. However, in its determination of attorney fees, the court stated that the employees' combined claim totaled $7,031.24. We are unable to determine the source of this discrepancy.
[3] It is unclear why the court referred to a federal statute, however, the factors found in this statute are similar to those found in SCR 20:1.5.
[4] SUPREME COURT RULE 20:1.5 provides in part:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.