LOCAL 321, INTERNATIONAL ASSOCIATION OF FIRE
FIGHTERS, Racine Police Association and Local 67,
American Federation of State, County and
Municipal Employees, AFL-CIO,
Plaintiffs-Respondents,

v.

CITY OF RACINE, Wisconsin, Defendant-Appellant.

Court of Appeals

*No. 2013AP290. Submitted on briefs August 28, 2013.
—Decided November 20, 2013.*

2013 WI App 149

(Also reported in 841 N.W.2d 830.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joel S. Aziere, Mark L. Olson,* and *Sarrie L. Devore* of *Buelow Vetter Buikema Olson & Vliet, LLC*, Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Timothy E. Hawks* and *B. Michele Sumara* of *Hawks Quindel, S.C.*, Milwaukee, and *Aaron N. Halstead* of *Hawks Quindel, S.C.*, Madison.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. BROWN, C.J. Before Scott Walker became Governor of this state, and before 2011 Wis. Acts 10 and 32 were promulgated, thus greatly limiting public sec-

tor collective bargaining in Wisconsin, the City of Racine and various unions representing municipal workers entered into not one, but two collective bargaining agreements at the same time. One collective bargaining agreement (CBA) covered the period of 2011–12 and the other was for 2013–14. There is no dispute between the parties that the 2011–12 CBA is enforceable. This is because 2011 Wis. Act 10 (Act 10) and 2011 Wis. Act 32 (Act 32) expressly provide that the changes in the law become applicable to employees "covered by" an existing CBA only after expiration. The issue is whether the piggybacked CBA covering 2013–14 is likewise enforceable. The City says "no" because that CBA was not "in effect" at the time Acts 10 and 32 became operative. We agree with the circuit court, however, that the legislation was not designed to retroactively invalidate CBAs that were freely and voluntarily entered into by governmental entities and public sector unions before the acts took effect. We will go through Acts 10 and 32 and show why this is so. We affirm.

## Facts

¶ 2. The unions in this case represent five groups of City of Racine employees, including two groups of "public safety employees," firefighters and police and traffic officers, who are treated differently by Act 10 and Act 32. In late 2010 and early 2011, Racine ratified two separate contracts with each of the five bargaining units: one for the period 2011–12, and one for the period 2013–14.

¶ 3. Not long after these contracts were made, in March and June 2011, the Wisconsin Legislature enacted Act 10 and Act 32, which drastically limited public employees' collective bargaining rights in Wisconsin. Various provisions of Acts 10 and 32 were inconsistent

with provisions of the recently ratified CBAs between Racine and the five pertinent groups of employees. In particular, Act 10 bars public employees from bargaining over aspects of compensation other than general employees' "wages" and public safety employees' "wages, hours, and conditions of employment." WIS. STAT. § 111.70(1)(a) 2011–12.[1] Additionally, Act 32 changed municipalities' ability to increase the tax levy, thus tightening the municipalities' budgets. WIS. STAT. § 66.0602(2).

¶ 4. For employees already "covered by a collective bargaining agreement," 2011 Wis. Act 10, § 9332(1); 2011 Wis. Act 32, § 9332(1q), Acts 10 and 32 first apply when "the agreement expires or is terminated, extended, modified, or renewed, whichever occurs first." 2011 Wis. Act 10, § 9332(1); 2011 Wis. Act 32, § 9332(1q).

¶ 5. In July, citing provisions of Acts 10 and 32, the City rescinded its 2013–14 CBAs with the three categories of "general employees" in their entirety and rescinded various provisions of its 2013–14 agreements with the public safety employees. The unions sued to reinstate the agreements in full and filed a motion for summary judgment after the parties stipulated to the pertinent facts. The circuit court granted the unions' motion for summary judgment, holding that applying Acts 10 and 32 to the already-ratified 2013–14 CBAs "is contrary to the wording of the Acts and contrary to case law, contract law, and the concepts of fairness and equity." The City appeals.

*Analysis*

¶ 6. We review an appeal from summary judgment de novo, with the same methodology as the circuit

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

court. WIS. STAT. § 802.08(2); *Spring Green Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The judgment in this case depends upon interpretation of statutes and contractual provisions, which are questions of law that we review with no deference to the circuit court. *Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶¶ 28, 50, 346 Wis. 2d 635, 829 N.W.2d 522. In statutory interpretation, "We assume that the legislature's intent is expressed in the statutory language .... It is the enacted law, not the unenacted intent, that is binding on the public." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 7. Piggybacked CBAs, i.e., successive two-year agreements negotiated and ratified at one time, were not only permissible but were common practice in collective bargaining by municipalities before Acts 10 and 32. *See Hoffman v. WERC*, 2001 WI App 87, ¶ 18, 243 Wis. 2d 1, 625 N.W.2d 906. In a piggybacked negotiation, each agreement is a "separate contract," with its own two-year term. *Id.*, ¶ 16.

¶ 8. We interpret CBAs, like other contracts, with "the objective . . . to ascertain the intent of the contracting parties." *Roth v. City of Glendale*, 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467. A contract is formed by the exchange of promises in terms that are definite enough to be enforced. *Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶ 24, 291 Wis. 2d 393, 717 N.W.2d 58.

¶ 9. Against this backdrop of contract law, our legislature in 2011 enacted Acts 10 and 32. Generally speaking, statutes are presumed to operate prospectively, and interpreting a statute to apply retroactively

169

is disfavored. *Wipperfurth v. U-Haul Co. of W. Wis.*, 101 Wis. 2d 586, 590, 304 N.W.2d 767 (1981). One canon of construction advises that the court will not construe an act to have retroactive application unless the legislature has "by express language or necessary implication" made clear its intent that the law apply retroactively. *Employers Ins. of Wausau v. Smith*, 154 Wis. 2d 199, 224–25 & n.21, 453 N.W.2d 856 (1990).

> The canon of interpretation against retroactive legislation is a maxim based on characteristics of legislation and concepts of justice. The strong common-law tradition is that the legislature's primary function is to declare law to regulate future behavior. As a matter of justice, laws should not be enforced before people can learn of the law and conduct themselves accordingly, and retroactivity disturbs the stability of past transactions.

*Id.* at 223–224. This presumption against retroactivity can be overcome if the legislature's intent to apply the new law retroactively is clear, *see id.* at 226, and retroactive legislation may be permissible if it does not violate the state or federal constitutions, *id.* at 224.

■

¶ 10. Thus our first task is to determine whether the legislature clearly expressed the intent that the new collective bargaining laws apply retroactively, notwithstanding existing contracts. In interpreting a statute, we begin with the language of the relevant provisions. *Id.* at 226. If the language is clear, the analysis ends there. *Kalal*, 271 Wis. 2d 633, ¶ 45.

■

¶ 11. Acts 10 and 32 both contain clear, virtually identical provisions setting forth "initial applicability," under which the new laws "first apply to employees who

170

are covered by a collective bargaining agreement . . . that contains [inconsistent provisions] on the day on which the agreement expires or is terminated, extended, modified, or renewed, whichever occurs first." 2011 Wis. Act 10, § 9332(1); 2011 Wis. Act 32, § 9332(1q). Neither act provides a definition for "covered" or "covered by," and we find no such definition elsewhere in the Wisconsin statutes. When the legislature has not defined a word or phrase, we construe it consistent with ordinary usage, resorting to a dictionary if necessary. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 46, 299 Wis. 2d 561, 729 N.W.2d 396.

¶ 12. We agree with the unions and the circuit court that in ordinary usage, an employee is "covered by" a CBA whenever a CBA has been approved and the employee falls within the category of to whom the CBA pertains. This common-sense reading of "covered by" is consistent with the most relevant dictionary definitions, "to . . . take into account" or "to deal with." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 268 (10th ed. 1997).

¶ 13. Under this reading, Acts 10 and 32 will not apply to employees represented by the unions in this case until the 2013–2014 CBAs, which "covered" them before Acts 10 and 32 took effect, have ended or otherwise been modified. Acts 10 and 32 by their own terms simply do not apply to these employees yet.

¶ 14. The City's attempt to complicate this reading of the acts and the CBAs fall short. The City begins with the argument that because the 2013–2014 CBA was not "in effect" when the acts were passed, therefore the employees were not "covered by" it. Under ordinary principles of contract law, however, the fact that a contract contemplates that performance will not begin

until some date in the future does not change the fact that the contract exists and is an enforceable, legally protected relationship. The exchange of promises and valuable consideration is what cements the contract. *Ferraro v. Koelsch*, 124 Wis. 2d 154, 164, 368 N.W.2d 666 (1985) ("It is black letter law that a promise for a promise, or the exchange of promises, will constitute consideration . . . .").

¶ 15. Indeed, the very fact that the performance and payment the parties promise each other in a contract may not take place until some future date is one of the things that makes contracts so useful:

> The heart of 'contract' is . . . found both in its promissory nature and in its enforceability. As such, a contract enables parties to project exchange into the future and to tailor their affairs according to their individual needs and interests; once a contract is entered, the parties' rights and obligations are binding under the law . . . .

1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1.1 (4th ed. 2007). To reiterate, in the case at hand, all parties agree that the CBAs in question received final, formal approval of the unions and the City months before Acts 10 and 32 were enacted. Hence, the employees were parties to these contracts months before the acts were passed by our legislature. The CBAs already "covered" them.

¶ 16. None of the cases the City cites to shore up this argument actually helps the City's cause. For instance, no support for the City's reading of "covered by" is found in *Beaudette v. Eau Claire Cnty. Sheriff's Dep't*, 2003 WI App 153, 265 Wis. 2d 744, 668 N.W.2d 133, where the question was whether, after multi-year negotiations of a CBA, back pay for wage increases was due for employees who worked under the prior CBA but

resigned during the negotiations period. *Id.*, ¶¶ 4–5. The court simply applied the unambiguous terms of the new CBA, which made the negotiated provisions retroactive to immediately after the prior CBA expired. *Id.*, ¶ 29.

¶ 17. Apparently the City reasons that because the court in *Beaudette* found that the parties had agreed to make their CBA retroactive, we should find that the parties here intended their CBA to be suspended or not in existence until the date when they began performing its terms. But we see *Beaudette* instead as an ordinary contract case, enforcing the parties' clear intentions. The same logical flaw underlies the City's reliance on *Garczyk v. United Steelw orkers*, 763 F.2d 256 (7th Cir. 1985), where the federal circuit court gave effect to the parties' agreement to make the CBA there govern events that occurred during the negotiation period between the last CBA's expiration and the new one's execution. *See id.* at 262.

¶ 18. To repeat, in the case at hand the legislature directs us *not* to apply Acts 10 and 32 to employees who were "covered by a collective bargaining agreement" when those acts took effect. Nothing in *Beaudette*, *Garczyk*, or any of the other cases the City cites suggests that the employees were not "covered by" the 2013–2014 CBA immediately upon its execution. If anything, these cases cut against the City, because the courts in these cases upheld the parties' agreements.

¶ 19. In a second set of arguments, the City directs our attention to a single word, the article "a," in the initial applicability provisions of Acts 10 and 32. In the City's view, the provision that the acts "first apply to employees who are covered by *a* collective bargaining agreement . . . that contain*s* [inconsistent provisions] on the day on which the agreement expires or is

terminated, extended, modified, or renewed, whichever occurs first" (emphasis added) means in "clear plain words" that only one "single" CBA may delay the application of the acts. But it is common knowledge that in the English language, while the indefinite article "a/an" sometimes does signify one-and-only-one, it may in the alternative "precede a noun when the thing named is not already known to the reader." *Gowan v. McClure*, 185 Wis. 2d 903, 912–13, 519 N.W.2d 692 (Ct. App. 1994). In other words, the indefinite article "a" often means "any" (rather than "only one").

¶ 20. Such was our conclusion in *Gowan*, where we interpreted the rule concerning voluntary dismissal; the rule stated in relevant part that "[a]n action may be dismissed by the plaintiff without order of court by serving and filing a notice of dismissal at any time before service by *an* adverse party of responsive pleading or motion." *Id.* at 910 (emphasis added). The plaintiff argued that under this rule, though he could not voluntarily dismiss the action against the single party who responded to the action in court, he was permitted to dismiss the action against other adverse parties who had not responded. *Id.* at 911. We rejected that reasoning, concluding instead that the sentence meant that once *any* adverse party had responded in the action, the plaintiff no longer had the power to voluntarily dismiss the action against *any* party, period. *Id.* at 913.

¶ 21. Similarly, we reject the City's assertion that the legislature's use of the article "a" before the singular noun "collective bargaining agreement" is a clear expression of legislative intent that only a single CBA can be exempt from the initial applicability of Acts 10 and 32, even if piggybacked CBAs were already in place. When the legislature intends a law to upset settled contractual expectations, we expect a much clearer

statement of such intention. We read the provision to mean that any preexisting CBA was exempt from the new law.

¶ 22. The City's final arguments, relying upon legislative history, also fail. The City asserts that because the purpose of the acts was to "ensure fiscal stability" and "offer local governments the ability to manage spending reductions," the acts should be interpreted to go into effect "as soon as possible." As authority for this argument, the City relies upon language in Governor Walker's February 2011 press release concerning Act 10. Press Release, Governor Scott Walker (February 11, 2011). In the same vein, the City cites a Legislative Council Memo issued for Act 10, which explains that under the new legislation, municipal employees "who are subject to an extension of their collective bargaining agreement must have their agreement terminated as soon as legally possible." Wisconsin Legislative Council Act Memo, 2011 Wis. Act 10 (May 9, 2011). The City additionally argues that because the legislature imposed Act 32's new fiscal restraints upon municipalities immediately upon its effective date of July 1, 2011, "It is therefore evident that the Legislature specifically intended for the City to achieve fiscal savings through statutory limitations upon the scope of collective bargaining as soon as possible."

¶ 23. We are dubious of whether it is necessary or appropriate to consider evidence of legislative history in interpreting these provisions of Acts 10 and 32, where the ordinary meaning of the acts' initial applicability provisions is clear. *See Kalal*, 271 Wis. 2d 633, ¶ 46. But even if we were to consider the legislative history, the City's arguments are unconvincing. We read both the Governor's press release and the legislative council's memo as expressions that the legislation was expected

175

to take effect as soon as *legally* possible, i.e., as soon as possible without upsetting preexisting legal obligations like contracts. And as we have already explained, applying the acts retroactively to the 2013–2014 CBAs would have violated preexisting legal obligations between the parties, by voiding terms of their contract.

■■■■

¶ 24. It may be true that in certain circumstances, the legislature has the power to retroactively change the law even if doing so breaks parties' contracts, but the exercise of that power raises constitutional questions. *See Employers Ins.*, 154 Wis. 2d at 224. And although the question of the statutory meaning is separate from the question of constitutionality, *see id.*, at the same time it is the longstanding practice of this court not to "presume[] that a co-ordinate department of the government intended to violate the state or national constitution," *State ex rel. Van Alstine v. Frear*, 142 Wis. 320, 347, 125 N.W. 961 (1910). This court will not rewrite legislation when its clear meaning exceeds the bounds of the constitution, but, nonetheless, "that the legislature intends to pass statutes which are constitutional is always our starting point." *State v. Zarnke*, 224 Wis. 2d 116, 139, 589 N.W.2d 370 (1999).

¶ 25. We find in Acts 10 and 32 no clear expression of the intention to retroactively upend the settled expectations of piggybacked CBAs that were negotiated and agreed upon months before those acts took effect. To the contrary, the acts disclaim any such intention by exempting employees "covered by" already-existing CBAs until after those CBAs end or are modified.

¶ 26. As for the legislature's decision to make Act 32's fiscal constraints upon municipalities effective immediately while postponing the acts' collective bargain-

ing limits until preexisting CBAs expire, as inequitable as this result might seem to some observers, it is not for this court to remedy. "The statute in question may be inequitable, but this does not make it absurd." *Mellen Lumber Co. v. Industrial Comm'n,* 154 Wis. 114, 119, 142 N.W. 187 (1913).

¶ 27. For these reasons, we affirm.

*By the Court.*—Order affirmed.

¶ 28. GUNDRUM, J. (*concurring*). I write separately because I find the "Initial applicability" sections of 2011 Wis. Acts 10 and 32 ambiguous. Nonetheless, I agree with the majority that these sections must be read to encompass not only the 2011–12 collective bargaining agreements (CBAs) but also the 2013–14 CBAs because to read them otherwise would result in inappropriate retroactive application of the acts when such application is not called for in the "express language" of the acts or by "necessary implication." *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 224–25 n.21, 453 N.W.2d 856 (1990); Majority, ¶¶ 9, 23–25.

¶ 29. As the majority has explained, the matter at hand involves two separate sets of CBAs—one set for the period of 2011–12 and the other for the period of 2013–14—and at the time Acts 10 and 32 were enacted only the 2011–12 CBAs were in effect, although both the 2011–12 and 2013–14 CBAs had been agreed to and executed. Majority, ¶¶ 1–2.

¶ 30. The initial applicability sections of the acts provide that each act "first applies to employees who are covered by a collective bargaining agreement . . . that contains [inconsistent provisions] . . . on the day on which the agreement expires or is terminated, extended, modified, or renewed, whichever occurs first." 2011 Wis. Act 10, § 9332(1); 2011 Wis. Act 32,

§ 9332(1q). As the majority correctly notes, neither act defines "covered by," and, I believe, both the City's and the union's facial readings of the initial applicability sections are reasonable.

¶ 31. Statutory interpretation begins with the statutory language itself, and if the meaning is plain the inquiry ends there. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." *Id.*, ¶ 46 (citation omitted). Rather, the statutory language is interpreted reasonably in the context in which it is used so as to avoid absurd or unreasonable results. *Id.* If a statute is "capable of being understood by reasonably well-informed persons in two or more senses," however, the statute is ambiguous, *id.*, ¶ 47, and extrinsic sources may be consulted, *id.*, ¶ 50.

¶ 32. To begin, I find dictionary definitions to be of little assistance. While it is true, as the majority states, that "covered by" can be read to mean "to . . . take into account" or "to deal with," using the same dictionary as the majority, I observe that other definitions include "to afford protection against or compensation for," which could be read more favorably to the City's position. *See* Majority, ¶ 12; MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 268 (10th red. 1997).

¶ 33. Likewise, a broader review of the initial applicability sections fails to clarify the legislature's intent. As the City notes, use of the words "a," "agreement," "contains," "expires," and "is" all suggest the initial applicability of the acts refers to employees covered by a single CBA, as opposed to multiple CBAs. If that were the legislature's intent, the single CBAs referred to most certainly would be those executed *and*

178

in effect at the time the acts were enacted, here the 2011–12 CBAs, as opposed to those that may have been executed but not yet in effect. The former category unquestionably includes persons "covered by" a collective bargaining agreement. However, the majority points out that in *Gowan v. McClure*, 185 Wis. 2d 903, 912–13, 519 N.W.2d 692 (Ct. App. 1994), we said indefinite articles such as "a" do not necessarily imply a singular meaning because sometimes they "precede a noun when the thing named is not already known to the reader." Majority, ¶ 19. Here, it would be reasonable to read the initial applicability section in its actual singular form, and it would also be reasonable to read it as being potentially plural, in accord with *Gowan*, as the majority suggests. Without more, it would be arbitrary to choose one reading over the other. Thus, the initial applicability language—"first applies to employees who are covered by a collective bargaining agreement"— could reasonably be referring only to employees who are receiving benefits, i.e., who are "afford[ed] protection . . . or compensation," from a CBA which is in effect, or it could be referring to employees who are included in, i.e., "take[n] into account" or "deal[t] with" in, an agreed upon and executed CBA, whether or not that CBA has yet gone into effect.[1]

¶ 34. Consideration of whether the acts have retroactive or prospective application resolves the ambiguity. A law operates retroactively if it "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994). Retroactive application is application that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or

---

[1] Our review of the legislative history of 2011 Wis. Acts 10 and 32 also fails to resolve the ambiguity.

impose new duties with respect to transactions already completed." *Id.* at 280. There is a presumption against the retroactive application of law because it disturbs past transactions and is deemed incongruent with the concept of justice. *Id.* at 271 ("The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance."). For a law to apply retroactively, the legislature must clearly indicate such intent "by express language or necessary implication." *Employers Ins.*, 154 Wis. 2d at 224–25 n.21. And, as the majority has noted, when a statute is intended to apply retroactively, the question then becomes whether such application violates the state or federal constitutions. Majority,¶¶ 9, 24; *see Employers Ins.*, 154 Wis. 2d at 224; *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249–51 (1978).

¶ 35. As evidenced by the ambiguity of the initial applicability sections, the legislature did not exhibit a clear intent to apply Acts 10 and 32 retroactively. Here, there is no express language stating that the acts should apply retroactively, and retroactivity is not "necessar[ily] impli[ed]" because either prospective or retroactive application could "work" under the acts (assuming the constitutionality of any retroactive application). Further, the legislature no doubt was aware when it enacted Acts 10 and 32 that municipalities and public sector unions across the state routinely enter into CBAs that, like many contracts, do not take effect until some future time period, yet it chose not to clearly specify whether the acts were intended to apply to such agreements. As the majority states, "When the legislature intends a law to upset settled contractual

expectations, we expect a much clearer statement of such intention." Majority, ¶ 21. Due to the lack of clarity, the presumption against retroactivity remains, and the initial applicability sections of the acts can only be interpreted as applying the acts prospectively.

¶ 36. The City argues that a prospective application of the acts does not contravene its reading of "covered by" because what matters is whether the 2013–14 CBAs were "in effect" at the time the acts were enacted. To begin, the legislature chose to use the more ambiguous term "covered by," rather than "in effect." Further, the City cites to no authority for its position that the effective date of a contract, as opposed to the date of agreement and execution, is the date upon which parties become bound to one another and the terms of an agreement.[2] Indeed, as the majority has pointed out, such a position would appear to fly squarely in the face of basic contract law, *see* Majority,

---

[2] All of the cases the City references to show application of an effective date involve contracts in which the effective date was *prior* to the date of execution. *See, e.g., Beaudette v. Eau Claire Cnty. Sheriff's Dep't*, 2003 WI App 153, ¶ 28, 265 Wis. 2d 744, 688 N.W.2d 133 (citing an Oregon Supreme Court case where the contract was agreed to and executed on August 24, 1953, but its effective date was April 1, 1953); *Garczyk v. United Steelw orkers*, 763 F.2d 256, 258 (7th Cir. 1985) (contract agreed to and executed on November 1, 1977, but its effective date was August 1, 1977); *cf. Flynn v. Interior Finishes Inc.*, 425 F. Supp. 2d 38, 46 (D.D.C. 2006) (stating that parties can become bound on a "date before (or after) the date on which they actually signed the agreement," but addressing agreement that was executed after effective date). The singular lesson of these cases related to our question of the prospective/retroactive application of a statute is that the effective date becomes pertinent when it is *earlier* than the date of execution. This notion is in accord with the equitable principles noted in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 271 (1994).

¶¶ 14–15, as well as undermine the vital contractual goals of predictability and stability noted by the Supreme Court in *Landgraf*, 511 U.S. at 271. The date that matters for those purposes is the date on which both the City and the unions agreed to and executed the 2013–14 CBAs, and that date was prior to the enactment of the acts. Interpreting the acts in the manner the City requests would "attach[] new legal consequences to events completed before" the acts were adopted. *See id.* at 270. Thus, despite its arguments to the contrary, the City seeks retroactive application of the acts, something which the acts do not clearly call for.

¶ 37. In sum, 2011 Wis. Acts 10 and 32 can only be interpreted as applying to CBAs not yet agreed to and executed at the time those acts were enacted. To interpret the acts as applying to the 2013–14 agreements would require us to give the acts retroactive application, something the legislature did not clearly choose to do.